### WILLIAMS et al. v. YELLOW CAB CO. OF PITTSBURGH, PA., et al.

#### Appeal of DARGAN.
#### No. 10760.

United States Court of Appeals.
Third Circuit.

Argued Oct. 6, 1952.

Decided Dec. 8, 1952.

Hymen Schlesinger, Pittsburgh, Pa., for appellants.

Harold E. McCamey, Pittsburgh, Pa. (Richard O'N. Duff and Dickie, McCamey, Chilcote, Reif & Robinson, Pittsburgh, Pa., on the brief), for Yellow Cab Co. of Pittsburgh.

Ben Paul Jubelirer, Pittsburgh, Pa., for Union and Charles Weber.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The plaintiffs, Negro taxicab drivers now or formerly employed by the Yellow Cab Company of Pittsburgh, an operator of a fleet of taxicabs in Pittsburgh, Pennsylvania, brought suit in the United States District Court for the Western District of Pennsylvania on their own behalf and on behalf of other Negro taxicab driver-employees, against the Cab Company and Taxicab Drivers Local Union No. 128 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, of which union they were members, and two individuals, one an officer of the Cab Company and the other an officer of the Union. They charged the Cab Company and the Union, which was their collective bargaining representative, with a conspiracy to discriminate against them and to segregate them because of their race by means of certain working regulations. They sought an injunction restraining the continuation of the discriminatory practices, a declaratory judgment that the working regulations in question were illegal and void, compensatory damages and reinstatement of those plaintiffs discharged for violations of the regulations. The defendants filed motions to dismiss the complaint upon the ground that the district court had no jurisdiction to entertain it. The court sustained the motions and dismissed the complaint. 103 F.Supp. 847. Thomas H. Dargan, one of the plaintiffs, has appealed.

The appellant alleges that the Union was recognized by the Cab Company as the exclusive bargaining agent for all of its taxicab drivers. Agreements were negotiated by the Union covering rates of pay and working conditions "between the company and its drivers * * * on a uniform and equal basis and without discrimination." In October 1947 the Cab Company established its uptown garage and employed only Negroes to operate taxicabs from that garage. All these Negro taxicab drivers joined the Union. At a meeting attended by the representatives of the Cab Company, the Union and a committee which represented the Negro drivers of the uptown garage, certain additional working regulations were promulgated. The appellant claims that the defendants conspired by means of these additional working regulations to deprive the plaintiffs of rights equal to those which the white taxicab driver-employees enjoyed by prohibiting them from cruising to pick up passengers; by relegating them to inferior, discriminatory status in picking up passengers; by requiring them to leave a railroad station or cab stand if another cab driven by a white driver arrived; by denying them equal rights under a general seniority list in assignments to new taxicabs,

days off and selection of another garage; by unfairly relegating them to one garage in a particular section of Pittsburgh inhabited largely by Negroes and by imposing discriminatory penalties upon them.

On this appeal the appellant relies, as the plaintiffs did in the district court, upon two basis for asserting federal jurisdiction. The first basis for jurisdiction relied upon by the appellant is Section 1331 of Title 28, United States Code, which gives the district courts original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3000 and arises under the laws of the United States. The appellant's proposition is that this case arose under Section 9(a) of the National Labor Relations Act, as amended,[1] a law of the United States, and was, therefore, cognizable by the district court under Section 1331. The appellant contends that the Union was granted by this section of the act the right to represent as their exclusive bargaining representative all the drivers of the defendant company, both union and non-union members, white and Negro, in connection with the negotiation of collective agreements governing rates of pay and working conditions and that the grant of this right was conditioned by an obligation to bargain fairly and without discrimination. By agreeing to the additional working regulations under which the plaintiffs were employed and segregated in the uptown garage the Union, argues the appellant, violated this federal statutory obligation.

The appellant relies primarily upon the cases of Steele v. Louisville & N. R. Co.,

1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, to sustain his proposition. In these cases the Supreme Court held that the Brotherhood of Locomotive Firemen and Enginemen, when exercising the power granted by the Railway Labor Act to act as the statutory representative of the craft of firemen, composed of white members of the Brotherhood and Negro non-members, was under a duty imposed by the act to protect equally the interests of all the members of the craft in behalf of whom it acted. The court said that the power conferred on the Brotherhood by the act must be exercised fairly and without discrimination between its own member employees and those employees who were not its members. This rule does not preclude the statutory representative of a craft from making contracts the terms of which vary in their application to individual employees by reason of differences in seniority, competence, type of work done, or other relevant factors, but the court pointed out that discrimination based on race alone is irrelevant, invidious and unauthorized. It is clear that the duty thus imposed upon a statutory collective bargaining representative by the Railway Labor Act is likewise imposed by the National Labor Relations Act upon representatives exercising similar power by virtue of that act.[2]

The Supreme Court has said that Congress, by those acts, has created the relationship of principal and agent between the members of the craft and the bargaining representatives.[3] Thus in Wallace Corp. v. Labor Board, 1944, 323 U.S. 248,

1. "(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment." 29 U.S.C.A. § 159(a).

2. Wallace Corp. v. Labor Board, 1944, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216.

3. Steele v. L. & N. R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173.

255–256, 65 S.Ct. 238, 241, 89 L.Ed. 216, the court stated:

"The duties of a bargaining agent selected under the terms of the Act extend beyond the mere representation of the interests of its own group members. By its selection as bargaining representative, it has become the agent of all the employees, charged with the responsibility of representing their interests ·fairly and impartially. Otherwise, employees who are not members of a selected union at the time it is chosen by the majority would be left without adequate representation." [4]

It does not follow, however, that the National Labor Relations Act imposed such a duty upon the Union in this case. For even if we assume that the Cab Company was engaged in interstate commerce, the act contains no general prohibition of discriminatory practices by unions engaged in collective bargaining with employers. On the contrary, as we have pointed out, the prohibition is merely an implied condition upon the grant of power to bargain collectively which Section 9(a) of the act confers. The question, therefore, narrows down to whether the Union in this case derived its bargaining powers from the act and was, therefore, subject to the implied condition that those powers be exercised without discrimination.

In considering this question we must bear in mind that the plaintiffs were all members of the Union.[5] This is the distinguishing factor which makes the rule of the Steele case inapplicable to the facts of this case. In the Steele case the Supreme Court pointed out: 323 U.S. at page 199, 65 S.Ct. at page 230.

"Since petitioner and the other Negro members of the craft are not members of the Brotherhood or eligible for membership, the authority to act for them is derived not from their action or consent but wholly from the command of the Act."

 The right of a labor union to engage in collective bargaining on behalf of its members is a right which was not conferred by the National Labor Relations Act but was recognized long prior thereto.[6] In exercising its powers to bargain collectively for its members as in all its other activities on their behalf a labor union acts, through its authorized officers, as agent of the entire membership within the authority conferred by its constitution and bylaws.[7] In exercising these bargaining powers the labor union has the corresponding duty of an agent to represent all its members fairly, in good faith and without discrimination. This duty, however, being one imposed by the law of the state in which the Union operates, cannot be made the basis for invoking federal jurisdiction under Section 1331, even though it might well form the basis for action in the state courts.[8] As we have said, the plaintiffs here were all members of the Union. We are compelled to conclude that the authority of the Union to act for them in collective bargaining was derived from their consent as evidenced by their membership and not from Section 9(a) of the National Labor Relations Act.

4. See also Graham v. Southern Ry. Co., D.C.D.C., 1947, 74 F.Supp. 663.

5. In their amended complaint the plaintiffs alleged that six of the plaintiffs were not members of the Union. However, the district court found that they were members and there is no issue raised in this regard on appeal.

6. American Steel Foundries v. Tri City Central Trades Council, 1921, 257 U.S. 184, 209, 42 S.Ct. 72, 66 L.Ed. 189; National Labor Relations Board v. Jones & Laughlin, 1937, 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed. 893; Amalgamated Utility Workers v. Edison Co., 1940, 309 U.S. 261, 263, 60 S.Ct. 561, 84 L.Ed. 738; Jefferson & Indiana Coal Co. v. Marks, 1926, 287 Pa. 171, 175–176, 134 A. 430, 431, 47 A.L.R. 745; Fay v. Douds, 2 Cir., 1949, 172 F.2d 720, 724.

7. Gordon v. Tomei, 1941, 144 Pa.Super. 449, 460; 19 A.2d 588, 593; Prentice v. Unemployment Compensation Board of R., 1948, 161 Pa.Super. 630, 637–638, 56 A.2d 295, 299.

8. See Cameron v. International Alliance, etc., 1935, 118 N.J.Eq. 11, 176 A. 692, 97 A.L.R. 594; Gordon v. Tomei, 1941, 144 Pa.Super. 449, 467, 19 A.2d 588, 596.

The appellant relies upon the recent decision of the Supreme Court in Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, as authority for the proposition that a union bargaining only for its own employees is nonetheless subject to the statutory duty to bargain in a way so as not to discriminate against other employees on grounds of race alone. That case arose under the Railway Labor Act, as amended,[9] the provisions of which provide in great detail for the manner and course of collective bargaining between the railroads and their employees. Section 2 of the act provides that it shall be the duty of all carriers and their employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions and to settle all disputes whether arising out of the application of such agreements or otherwise in order to avoid any interruption of commerce.[10] Provisions are made for conferences between representatives of a carrier and its employees in case of a dispute, for reference to appropriate adjustment or mediation boards or boards of arbitration of disputes not adjusted in such conferences, and if all these procedures fail for the appointment by the President of an emergency board to investigate and report respecting the dispute, with a final statutory mandate that for thirty days after an emergency board has made its report to the President no change, except by agreement, shall be made by any party to the controversy in the conditions out of which the dispute arose.

It was in the performance of the duty thus imposed upon it by the Railway Labor Act to settle a dispute between its members and their railroad employer that the union in the Howard case entered into the agreement with the railroad which was the subject of attack in that case. The Brotherhood of Railroad Trainmen, the union in that case, was the bargaining agent only for its own members, the white brakemen of the railroad. The Negro train porters, who the Supreme Court held had been dis-

criminated against by the contract, were represented by another Brotherhood of which they were members and were not regarded as members of the brakemen's craft for purposes of collective bargaining. As appears from the opinion of the district court in the case, Howard v. Thompson, 72 F.Supp. 695, 699, the dispute had continued to the point where an emergency board had been appointed by the President and had made its recommendation. After further negotiations the agreement under attack was reached between the railroad and the Brotherhood. Under these circumstances it is clear that the union in the Howard case in making the agreement was acting under the express mandate of the Railway Labor Act to reach a settlement of its dispute so as to prevent an interruption of commerce by a strike and that it accordingly was under the implied duty which, as the court pointed out in the Steele and Tunstall cases, the statute imposes upon those who act under it to do so fairly and without discrimination.

When we turn to the National Labor Relations Act we find no such detailed regulation of collective bargaining. For the act was directed primarily to the prevention of unfair labor practices in order to open the way for free collective bargaining rather than to the regulation of the course of such bargaining and the settlement of disputes. The Railway Labor Act on the other hand regulates labor relations in an industry in which collective bargaining has long been general practice and its purpose is to prevent the interruption of interstate railroad transportation by providing detailed machinery for the mediation and settlement of such labor disputes as may arise and which may possibly lead to strikes. We think, therefore, that the Howard case is not authority for the proposition that the National Labor Relations Act imposes upon a union which does not derive its bargaining power from Section 9(a) of that act any statutory duty with respect to discrimination. We conclude that the district court rightly held that the complaint did not set

9. 45 U.S.C.A. §§ 151 et seq.
10. Terminal R. Ass'n of St. Louis v. Broth-

erhood of Railroad Trainmen, 1943, 318 U.S. 1, 5, 63 S.Ct. 420, 87 L.Ed. 571.

up a controversy under the laws of the United States within its jurisdiction under Section 1331.

 The second basis upon which jurisdiction is claimed is Section 1343 of Title 28, United States Code, commonly known as the Civil Rights Act, the relevant portion of which is set out in a note.[11] The Civil Rights Act was originally enacted to enforce the Fourteenth Amendment. It has long been settled that the Fourteenth Amendment is directed only to state action and that the invasion by individuals of the rights of other individuals is not within its purview.[12] It necessarily follows that the jurisdiction conferred upon the federal district courts by Section 1343 is similarly limited and that redress for the invasion by an individual of the civil rights of another must be sought in the state courts,[13] unless, of course, diversity of citizenship is present.

 The defendants in this case obviously are not state officers. The plaintiffs assert, however, that the Union acted under color of state law in agreeing on their behalf to the discriminatory working regulations in controversy and thus brought itself within the terms of Section 1343. The argument is that the Union was acting under authority conferred upon it by the Pennsylvania Labor Relations Act.[14] The appellant points to Section 7(a) of the Pennsylvania Act which confers upon representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a bargaining unit the power to act as exclusive representatives of all the employees in the unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment. The answer to this contention of the appellant has already been given. As we have demonstrated earlier in this opinion the Union was acting as bargaining agent for its members, including the Negro taxicab drivers, pursuant to their consent as its members and not by virtue of any power conferred upon it by statute, either federal or state.

The appellant cites the primary election cases in which the Supreme Court upheld the right of Negro citizens to vote in primary elections which were held solely under the rules of a political party and without any authority of a state statute.[15] These cases are clearly distinguishable, however, in that the party officials involved in them, although not acting under statutory authority, were participating in processes essential to the conduct of state elections, a basic state function. Finally the appellant refers to the decision of this court in Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240. That case, however, does not support their contention since it was there averred that the private corporate defendants conspired with state officials to deprive the plaintiffs of their civil rights.

We conclude that the district court rightly held that it did not have jurisdiction under Section 1343.

The judgment of the district court will be affirmed.

11. "§ 1343. Civil rights.
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 * * * * * *
 "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

12. United States v. Cruikshank, 1875, 92 U.S. 542, 554, 23 L.Ed. 588; United States v. Harris, 1882, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290; Civil Rights Cases, 1883, 109 U.S. 3, 11, 17, 3 S.Ct. 18, 27 L.Ed. 835; Shelley v. Kraemer, 1948, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L. Ed. 1161.

13. Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Love v. Chandler, 8 Cir. 1942, 124 F.2d 785, 787.

14. 43 P.S.Pa. § 211.1 et seq.

15. Smith v. Allwright, 1944, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; Rice v. Elmore, 4 Cir. 1947, 165 F.2d 387, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L. Ed. 1151.