223 F.2d 739
 John SYRES and Louis J. Warrick, Appellants,
v.
OIL WORKERS INTERNATIONAL UNION, LOCAL NO. 23, F. A. McDuffie, Chairman Gulf Main Plant Group and Gulf Oil Corporation, E. R. McAdams, Chairman of Gulf Workmen's Committee, Appellees.
 No. 15286.
 United States Court of Appeals Fifth Circuit.
 June 21, 1955.
 Rehearing Denied August 5, 1955.
 
 1
 Roberson L. King, Houston, Tex., William E. Rentfro, Denver, Colo., Dent, Ford, King & Wickliff, Houston, Tex., Lindsay P. Walden, General Counsel, Denver, Colo., for appellants.
 
 
 2
 Quentin Keith, Beaumont, Tex., Joseph H. Sperry, Chris Dixie, John E. Bailey, William F. Erwin, Jr., Houston, Tex., Eldon Young, Houston, Tex., Russell G. Connolly, Pittsburgh, Pa., David Proctor, Archie D. Gray, Houston, Tex., of counsel, for appellees.
 
 
 3
 Before RIVES, Circuit Judge, and DAWKINS and DE VANE, District Judges.
 
 
 4
 DAWKINS, District Judge.
 
 
 5
 Syres and Warrick, as representatives of all individuals similarly situated, and Local No. 254 of the Oil Workers International Union brought this action in the district court for an injunction to prevent the enforcement of a bargaining agreement with the employer, for declaratory judgment that the agreement is void and for damages. The defendants were Local No. 23 of the Oil Workers Union, Gulf Oil Corporation (called Gulf) and certain individuals as class representatives. The trial court dismissed for lack of jurisdiction.
 
 
 6
 Appellants alleged that Local No. 254 is composed of Negro employees of Gulf and Local No. 23 of white employees. Pursuant to an agreement between the two locals, and after an election, they were both certified as the joint bargaining representatives of Gulf's employees and entered into contracts with Gulf. Subsequently the two locals decided to "amalgamate" and be represented by one bargaining committee, as to which complainants allege it was agreed there should be only "one line" for seniority. The committee was chosen by majority vote, and was composed entirely of white members of Local No. 23. Negotiations with Gulf resulted in a contract providing for two lines of seniority, and the effect, according to complainants, was to freeze the Negro employees in their jobs and prevent their bidding on higher classifications. They further alleged that this discrimination was based solely on race, and invoked jurisdiction under 28 U.S.C. § 1331, contending that it was a suit in equity involving an interpretation of the Constitution and laws of the United States, namely, the Fifth Amendment and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. They of course alleged the jurisdictional amount of more than $3,000.
 
 
 7
 The union defendants moved to dismiss for lack of jurisdiction and for failure to state a claim. Gulf moved to dismiss for the reason that the amount did not exceed $3,000, the controversy did not arise under the Constitution or laws of the United States, the matter was one exclusively for the National Labor Relations Board, and the complainants had not exhausted the remedies provided by the constitution and by-laws of the union. Judge Sheehy dismissed for the reason that the "cause of action, if any, * * * does not arise under the Constitution, laws or treaties of the United States, within the purview or meaning of" 28 U.S.C. § 1331.
 
 
 8
 Appellants cite Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283, which arose under the National Railway Labor Act, 45 U.S.C.A. § 151 et seq. There it was held that said Act, having created a statutory bargaining agent for all railroad workers, imposed an implied duty to represent all workers fairly and without discriminations based upon race. Appellants cite Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048, in support of their contention that the Taft-Hartley Act, 29 U.S.C.A. § 151 et seq., also makes the chosen union the exclusive statutory bargaining agent. Based upon these authorities, they argue that the union (amalgamated) must represent all members of the craft without discrimination as to color, and having failed to do so, the result is the same as was held under the Railway Labor Act. They further argue that the right claimed is a private one over which the N.L.R.B. has no jurisdiction, since that agency deals only with public rights, for which reason they contend they have no administrative remedy.
 
 
 9
 Gulf argues that even if the claimed right does arise under the Taft-Hartley Act, it imposes no duty upon the employer to bargain for one group of employees in an agreement solely between two groups of the union. Further, it contends that the Fifth and Fourteenth Amendments apply only to official acts of the State and Federal Governments and the Taft-Hartley Act does not accord the right here claimed. It relies strongly upon Williams v. Yellow Cab Co., 3 Cir., 200 F.2d 302, which distinguished the "railroad brotherhood" cases from those arising under the Taft-Hartley Act and refused to apply them. It further argues that at best the facts alleged amount to nothing more than an unfair labor practice of which the N.L.R.B. has exclusive jurisdiction, citing Carter Manufacturing Co., 59 N.L.R.B. 804, General Motors Corp., 62 N.L.R.B. 427, and Hughes Tool Co., 104 N.L.R.B. 318. It finally contends that there is no allegation that appellants have exhausted remedies under the union's constitution and by-laws, or that none exists.
 
 
 10
 The union appellees (No. 23) refrain from contending that the Taft-Hartley Act does not confer rights of this character under any circumstances but content themselves with saying, in this particular case, the issue is between one element of the amalgamated union against the joint bargaining agent duly certified and that the dispute concerns merely the private matter of seniority, not covered by the Taft-Hartley Act, and hence does not arise under Federal laws.
 
 
 11
 The International Union seeks to appear as amicus curiae, and its brief sides with the appellants. It joins appellants in arguing that a bargaining agent derives its authority from the statute, rather than from the consent of its members and has the same legal duty to refrain from racial discrimination as was held under the Railway Labor Act. In any event, it contends that whether or not the appellants were all members of the union was a fact issue which could not be decided without a hearing on the merits.
 
 
 12
 In Williams v. Yellow Cab Co., supra [200 F.2d 304], the Third Circuit Court of Appeals, one of whose members was Judge Hastie, had occasion to consider substantially the same questions as presented in the present case, and unanimously sustained a ruling that there was no jurisdiction. The Supreme Court denied certiorari. Dargan v. Yellow Cab Co., 346 U.S. 840, 74 S.Ct. 52, 98 L.Ed. 361. Judge Maris reviewed and distinguished the cases relied upon here. We feel little need be added to what was said:
 
 
 13
 "The appellant relies primarily upon the cases of Steele v. Louisville & N. R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood [of Locomotive Firemen and Enginemen], 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, to sustain his proposition. In these cases the Supreme Court held that the Brotherhood of Locomotive Firemen and Enginemen, when exercising the power granted by the Railway Labor Act to act as the statutory representative of the craft of firemen, composed of white members of the Brotherhood and Negro nonmembers, was under a duty imposed by the act to protect equally the interests of all the members of the craft in behalf of whom it acted. The court said that the power conferred on the Brotherhood by the act must be exercised fairly and without discrimination between its own member employees and those employees who were not its members. This rule does not preclude the statutory representative of a craft from making contracts the terms of which vary in their application to individual employees by reason of differences in seniority, competence, type of work done, or other relevant factors, but the court pointed out that discrimination based on race alone is irrelevant, invidious and unauthorized.
 
 
 14
 * * * * * *
 
 
 15
 "It does not follow, however, that the National Labor Relations Act imposed such a duty upon the Union in this case. For even if we assume that the Cab Company was engaged in interstate commerce, the act contains no general prohibition of discriminatory practices by unions engaged in collective bargaining with employers. * * *
 
 
 16
 "In considering this question we must bear in mind that the plaintiffs were all members of the Union. This is the distinguishing factor which makes the rule of the Steele case inapplicable to the facts of this case.
 
 
 17
 * * * * * *
 
 
 18
 "The right of a labor union to engage in collective bargaining on behalf of its members is a right which was not conferred by the National Labor Relations Act but was recognized long prior thereto. In exercising its powers to bargain collectively for its members as in all its other activities on their behalf a labor union acts, through its authorized officers, as agent of the entire membership within the authority conferred by its constitution and bylaws. In exercising these bargaining powers the labor union has the corresponding duty of an agent to represent all its members fairly, in good faith and without discrimination. This duty, however, being one imposed by the law of the state in which the Union operates, cannot be made the basis for invoking federal jurisdiction under Section 1331, even though it might well form the basis for action in the state courts. As we have said, the plaintiffs here were all members of the Union. We are compelled to conclude that the authority of the Union to act for them in collective bargaining was derived from their consent as evidenced by their membership and not from Section 9(a) of the National Labor Relations Act.
 
 
 19
 * * * * * *
 
 
 20
 "When we turn to the National Labor Relations Act we find no such detailed regulation of collective bargaining. For the act was directed primarily to the prevention of unfair labor practices in order to open the way for free collective bargaining rather than to the regulation of the course of such bargaining and the settlement of disputes." (Emphasis supplied.)
 
 
 21
 In the Steele case, supra, the Supreme Court emphasized that the Railway Labor Act required the union to represent all employees in the craft, whether members or not, which gave non-members (in that instance Negroes) the right to invoke its provisions.[1]
 
 
 22
 In the Howard case, supra [343 U.S. 768, 72 S.Ct. 1025], petitioner was a member of a colored union but the contract was made between the railroad company and the white union in which the colored union and its members had no part. It was found that the provisions of the contract amounted to a patent effort to eliminate the colored porters who over the years had also performed the services of brakemen along with white employees of the craft who were represented by the Brotherhood. Here again, and for the same reason, the bargaining agent was bound to represent all who worked in the craft, and could not discriminate, thus giving the jurisdiction to enforce the Railway Labor Act, including the issuance of an injunction under 29 U.S.C.A. § 101 et seq. It was specifically held that what the white union had done was a "breach of statutory duty."
 
 
 23
 In the present case all employees were members of the "amalgamated" union by their own voluntary consent, and their complaint is not that they were not represented, but that the committee selected for the purpose of making the contract had violated the provisions of an agreement that there should be but one line for promotion, and instead contracted with Gulf for two lines, composed of the white and colored members respectively. In this situation, the alleged wrongdoing arose from a breach of that contract, which, if proven, would require a reformation or cancellation to comply with the understanding alleged through establishment of a single line of seniority for promotion. It does not require an interpretation of the National Labor Relations Act or any other federal law, and hence all parties on either side must be citizens of different states. There is no allegation of such diverse citizenship. In so far as this record shows, they are all citizens of Texas and their cause of action, if any, can be brought in the state court.
 
 
 24
 It may be noted, however, that seniority depends upon many things other than membership in a union or the race of the employee, in which the employer necessarily has a voice, and in a trial in the proper court all factors pertinent thereto can be fully developed and considered.
 
 
 25
 Ford Motor Co. v. Huffman, supra, involved the construction of federal statutes other than the National Labor Relations Act, including the Selective Training and Service Act of 1940, and amendments thereto. That case disposed of two suits brought in the trial court by employees against Ford and the Union as class suits, in which it was alleged that the complainants' position and that of each member of their class were lowered on the seniority roster because of certain provisions in collective bargaining agreements between Ford and the Union and that those provisions violated their rights and those of each member of their class under the Selective Training and Service Act of 1940. They contended also that the union's acceptance of these provisions exceeded its authority under the National Labor Relations Act. They asked that the provisions be declared invalid insofar as they prejudiced the seniority rights of members of their class and that appropriate injunctive relief be granted, just as here, against the defendants. Among other things the Supreme Court, with respect to seniority, said:
 
 
 26
 "Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals. A bargaining representative, under the National Labor Relations Act, as amended, often is a labor organization but it is not essential that it be such. The employees represented often are members of the labor organization which represents them at the bargaining table, but it is not essential that they be such. The bargaining representative, whoever it may be, is responsible to, and owes complete loyalty to, the interests of all whom it represents. In the instant controversy, International represented, with certain exceptions not material here, all employees at the Louisville works, including both the veterans with, and those without, prior employment by Ford, as well as the employees having no military service. Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.
 
 
 27
 "Compromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary. See, e. g., Hartley v. Brotherhood of [Ry. & S. S.] Clerks, etc., 283 Mich. 201, 277 N.W. 885; and see also, Williamson & Harris, Trends in Collective Bargaining (1945), 100-103." 345 U.S. 337, 73 S.Ct. 686. (Emphasis supplied.)
 
 
 28
 In that case no question of jurisdiction arose for the simple reason it required an interpretation of the Selective Service Act and its amendments. The District Court had found the bargaining agreement fair and denied the injunction. This was reversed by the Court of Appeals for the Sixth Circuit, 195 F.2d 170, and in turn, the latter decision was reversed by the Supreme Court, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 and the judgment of the District Court affirmed.
 
 
 29
 The present case does not require construction of a federal statute, but involves simply an issue of whether the defendants have violated a private contract voluntarily made between the two groups of employees. Even if the provision appellants deem objectionable be eliminated, there would still remain the issues of seniority and qualifications for promotion, the latter one as to which the employer must be heard.
 
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 "But we think that Congress, in enacting the Railway Labor Act and authorizing a labor union, chosen by a majority of a craft, to represent the craft, did not intend to confer plenary power upon the union to sacrifice, for the benefit of its members, rights of the minority of the craft, without imposing on it any duty to protect the minoritySince petitioner and the other Negro members of the craft are not members of the Brotherhood or eligible for membership, the authority to act for them is derived not from their action or consent but wholly from the command of the Act." 323 U.S. 199, 65 S.Ct. 230. (Emphasis supplied.)
 RIVES, Circuit Judge (dissenting).
 On its face, the provision in the collective bargaining contract of April 17, 1954 to which appellants object[1] does not appear to be discriminatory. There can be no valid objection to terms of a contract governing promotions in employment which vary in their application to individual employees by reason of competence, type of work, or other relevant factors,[2] among which ordinarily would be included the unit within which seniority is computed.[3]
 A contract innocent on its face may, however, be entered into with an ulterior motive and for a wrongful purpose. The complaint alleges that presently only negro employees comprise the Labor Division and only persons of the white race compose the Operating-Mechanical Division of the employer, and further that "many of the jobs in the Operating-Mechanical Division are more remunerative than the jobs in the Labor Division and are for other reasons desirable." The complaint also alleges that the quoted provision of this contract (footnote 1, supra) was the result of a conspiracy on the part of the defendants "to deprive plaintiffs of valuable employment rights aforesaid solely on account of race and/or color."
 Even those averments, however, do not make a case within the jurisdiction of the federal courts unless the law either enters into the making of the contract or provides sanctions for its observance, for there is at this time no federal law preventing parties by private agreement from discriminating solely on account of race or color. If, on the other hand, the contract is the product not merely of private agreement, but also of the provisions of the law,[4] or if the law is called on for the enforcement of the contract,[5] or, it seems to me to follow as a necessary consequence, if the law provides automatic sanctions for the observance of the contract, then there can be no discrimination based on race or color. All men are entitled to the equal protection of the law and, except as punishment for wrongdoing, the law will not lend its aid to keep any man down, or to prevent his advancement or promotion.
 It seems clear to me that the law both entered into the making of this collective bargaining contract and also provides automatic sanctions for its observance. The bargaining unit was determined by the National Labor Relations Board pursuant to the provisions of the law.[6] Thereafter, acting further under the provisions of the National Labor Relations Act[7] the members of the unit elected a bargaining representative and the Board certified both the negro Local No. 254 and the white Local No. 23 to act jointly as the exclusive bargaining agent. The majority of the employees belonged to the white Local No. 23, and prior to January 5, 1954 contracts were negotiated through a workmen's committee, composed of eight persons from the white Local No. 23 and four persons from the negro Local No. 254. A plan was then agreed upon by which workmen's committee nominations would be made at a joint meeting of both locals, but with the assurance to the negro Local No. 254 and its members that in negotiating contracts the workmen's committee would in no manner discriminate nor permit any contract to be negotiated which would be discriminatory because of race or color. Up to that time, collective bargaining agreements with the employer had contained "one line" nondiscriminatory seniority provisions. There is no explanation of just how those provisions had operated to the result that only negro employees comprised the Labor Division and only persons of the white race composed the Operating-Mechanical Division of the employer. In any event, the workmen's committee, which negotiated the contract of April 17, 1954, was composed of persons all of the white race who held membership in the white Local No. 23. The determination of the bargaining unit, the election by the employees in the bargaining unit of their representative for purposes of collective bargaining, and the certification of that representative had all been pursuant to the provisions of the National Labor Relations Act. One efficient operating cause for the alleged discriminatory provision was the determination of a bargaining unit composed mostly of white persons and the certification of a bargaining representative also composed in the majority of persons of the white race. Those were the acts which made the alleged discriminatory provision possible and those acts were accomplished pursuant to the National Labor Relations Act. 29 U.S.C.A. § 158(a) (5) and § 158(b) (3) make it unlawful for either the employer or the union to refuse to bargain with and through the representative designated or selected for the purpose. The law, therefore, very clearly and definitely entered into the making of this collective bargaining contract.
 It is no answer to say that the plaintiffs are entitled to no relief because they were all members of one of the two locals composing the bargaining agent. I am not sure that that would be the result of the holding in Williams v. Yellow Cab Co., 3 Cir., 200 F.2d 302, but, if it would, I must, with much deference, respectfully disagree with such holding. In the absence of statute, membership in a local union would not of itself carry any requirement similar to the provision of the statute, 29 U.S.C.A. § 159(a), that,
 "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment". (Emphasis supplied.)
 Without the statutory provision, a person might be a member of a local labor union and still retain the right to speak for himself or to have others speak for him as to some of the conditions of his employment. The statute takes away any such right and constitutes the representative designated or selected for purposes of collective bargaining the exclusive representative of all the employees. A member of a local union who finds himself in the minority in the selection of such a representative, or in the selection of the workmen's committee to act for such representative, is almost, if not quite, as powerless to protect himself as is a nonunion member. I can see no valid distinction in the protection afforded by the law between persons who are not members of any union and persons who are minority members of the locals composing the bargaining representative. Certainly, by his consent to union representation, a laborer does not forfeit his right to redress unconstitutionally discriminatory practices which he would have retained had he refrained from union membership.
 The law not only played an important part in the making of the collective bargaining contract, but it provides automatic sanctions for its enforcement. 29 U.S.C.A. § 158(d) reads in part:
 "That where there is in effect a collective bargaining contract covering employees in an industry affecting commerce * * * no party to such contract shall terminate or modify such contract, unless the parties desiring such termination or modification * * * (4) continues in full force and effect, without resorting to strike or lockout, all the terms and conditions of the existing contract for a period of sixty days * * * or until the expiration date of such contract, whichever occurs later * * *
 "Any employee who engages in a strike within the 60-day period specified in this sub-section shall lose his status as an employee of the employer * * *."
 In Local No. 3, United Packinghouse Workers v. National Labor Relations Board (Wilson & Co. v. N. L. R. B.), 8 Cir., 210 F.2d 325, it was held that striking employees lose their status as employees if they strike before the expiration date of the contract. If the averments of the complaint are true, the negro Local No. 254 and its members are constrained to accept racial discrimination because of the duties imposed under the National Labor Relations Act.
 There are no adequate remedies available to appellants under the National Labor Relations Act or through the Board.[8] The National Labor Relations Act gives the Board power to remedy specific "unfair labor practices" as defined in said Act. Nowhere is the Board given power to prevent discrimination because of race or color, except by very limited procedure which would afford no adequate remedy in this case.
 It is suggested that appellants could petition the Board for (1) a separate bargaining unit of their own, or (2) decertification of their bargaining representative. There is, however, no administrative means by which the negro members can secure adequate separate representation for the purposes of collective bargaining.[9] Decertification by the Board would afford no remedy at all. The alleged discriminatory contract would remain in full force after any such decertification. Further, there is no assurance that the majority of the employees in the unit, who are white persons, would select another representative who would bargain without discrimination.
 It seems to me that 29 U.S.C.A. § 159 (a) impliedly, but clearly imposes a duty on a certified bargaining agent not to abuse the bargaining prerogative by resorting to unconstitutionally discriminatory practices. Further, I think that the federal courts have jurisdiction to protect negroes from loss of promotional rights solely because of their race or color, under compulsion of a collective bargaining contract between their employer and their exclusive bargaining representative, which was executed pursuant to the duty to bargain under the National Labor Relations Act. I must, therefore, respectfully dissent.
 Rehearing Denied: RIVES, Circuit Judge, dissenting.
 Notes:
 
 
 [1]
 "Sec. 1(D) Promotional charts shall be established for all lines of promotion in each department. Promotions, demotions, lay-offs, bidding, and other applications of seniority shall be made separately by division — i. e., Labor Division and Operating-Mechanical Division — * *"
 
 
 [2]
 Steele v. Louisville & N. R. Co., 323 U. S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Williams v. Yellow Cab Co., 3 Cir., 200 F.2d 302
 
 
 [3]
 See Ford Motor Co. v. Huffman, 345 U.S. 337, 73 S.Ct. 681, 97 L.Ed. 1048
 
 
 [4]
 See Steele v. Louisville & N. R. Co., supra; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 310, 65 S.Ct. 235, 89 L.Ed. 187; Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283
 
 
 [5]
 Shelley v. Kraemer, 334 U.S. 1, 8 et seq., 68 S.Ct. 836, 92 L.Ed. 1161
 
 
 [6]
 29 U.S.C.A. § 159(b)
 
 
 [7]
 29 U.S.C.A. § 159(e)
 
 
 [8]
 See Steele v. Louisville & N. R. Co., supra; Brotherhood of R. R. Trainmen v. Howard, supra
 
 
 [9]
 See Steele v. Louisville & N. R. Co., supra. See also, Crescent Bed Co., 29 NLRB 34; Columbian Iron Works, 52 NLRB 370; Larus & Bros. Co., 54 NLRB 1345; American Tobacco Co., 9 NLRB 579; and Georgia Power Co., 32 NLRB 692