**FARRAND OPTICAL CO., Inc.,**
Plaintiff,

v.

**LOCAL 475, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL-CIO, Defendant.**

United States District Court
S. D. New York.
July 31, 1956.

**528**

Satterlee, Warfield & Stephens, New York City, for plaintiff, F. W. H. Adams, New York City, Joseph R. Crowley, New Rochelle, N. Y., of counsel.

Delson, Levin & Gordon, New York City, for defendant, Carl Slater, Harriett R. Taylor, New York City, of counsel.

LEVET, District Judge.

This is a motion by plaintiff for a preliminary injunction. Plaintiff is a corporation organized under the laws of the State of New York and engaged in the manufacture and sale of optical goods which are shipped in interstate commerce. It is alleged that more than 80% of plaintiff's present production consists of bombsights and related equipment for the B–52 Bomber of the United States Air Force and that plaintiff is the sole producer of such bombsights and the only manufacturer presently equipped to produce them. Defendant is an unincorporated labor organization maintaining its principal office in the Borough of Bronx, City of New York, and is the bargaining representative of plaintiff's employees.

In this action, which was commenced on July 18, 1956, plaintiff seeks to obtain a judgment permanently enjoining defendant (a) from representing that there exists a strike or labor dispute; (b) from picketing; and (c) from violating the terms of a written agreement dated July 6, 1956. Plaintiff also seeks money damages.

On August 1, 1953, the parties entered into a collective bargaining agreement which was to have expired on July 31, 1955, but which had been extended and is still in effect. Paragraph XX of said agreement contains a prohibition against strikes during the life of the agreement. Nevertheless, on May 16, 1956, nearly all of plaintiff's maintenance and production employees went out on strike because of certain problems relating to conditions of employment between plaintiff and its employees. The basic matter which was in dispute concerned the question of seniority. Other issues which were involved related to the discharge of the shop chairman, the allocation of overtime and the amount of time the union representatives would be permitted to spend on grievances. After numerous

negotiations and with the assistance of the Federal Mediation and Conciliation Service and the City Labor Department, an agreement was signed on July 6, 1956 by plaintiff and defendant which purported to settle the dispute. .

By an independent oral statement of defendant's officer, defendant contends that the agreement of July 6, 1956 was conditioned upon ratification by the employees and that the employees have not ratified the agreement. Plaintiff asserts that although the representatives of the union suggested that the agreement should be subject to ratification by the employees, this suggestion was rejected. In any event, it does not appear that the terms of the agreement were ever formally presented to the employees for ratification, although the vice-chairman of the shop committee states in his opposing affidavit that the men in the shop declined to ratify the proposed settlement at a meeting on July 9, 1956, and that, therefore, it never became effective. As another ground for its argument that the agreement never became effective, defendant asserts that compliance with paragraph one of said agreement was a condition precedent to the efficacy of the agreement and that there had been no compliance with the terms of said paragraph, which reads as follows:

"1. The Employees of the Company who are members of the Union will return to work not later than July 10, 8 A.M., it being understood that the strike will be deemed to have ended at that time, and that prior to that time the Union will order all of its members who are scheduled to return to work to report for work. *It is further understood that this Agreement shall not become effective unless and until this Paragraph is complied with.*" (Emphasis supplied.)

It is undisputed that the workers did not return to work on July 10th, as set forth in the aforesaid paragraph, and that defendant did not order them back to work. Hence, defendant argues that the agreement never became effective. Plaintiff alleges that there is no labor dispute involved since the agreement of July 6, 1956 resolved all the matters which were in dispute and that no new questions have developed subsequent to the signing of said agreement.

There is no allegation of violence or that the public officers charged with the duty to protect plaintiff's property are unable or unwilling to furnish adequate protection.

Pending the trial of this action, plaintiff has moved for an order enjoining defendant (a) from representing that there exists a strike by plaintiff's employees or a labor dispute between plaintiff and such employees; (b) from picketing the premises of the plaintiff or any of its customers, suppliers or other person; and (c) from violating the terms of the agreement of July 6, 1956.

Jurisdiction is predicated on the provisions of Section 301(a) of the Labor Management Relations Act of 1947 (Taft-Hartley Act), 29 U.S.C.A. § 185 (a), which provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

From the above language, plaintiff concludes that an action to enjoin the violation of a contract between an employer and the bargaining representative of its employees is a suit "for violation" of contracts, within the meaning of the statute.

However, the defendant asserts that the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., precludes this Court from enjoining it from picketing plaintiff's premises. The pertinent sections of the Norris-LaGuardia Act are 101 and 113 (c). Title 29 U.S.C.A. § 101 states:

"No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

Title 29 U.S.C.A. § 113(c) provides as follows:

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

Plaintiff cites the following cases in support of its contention that there exists a proper jurisdictional basis for granting the relief requested: Syres v. Oil Workers International Union, Local No. 23, 5 Cir., 1956, 223 F.2d 739, certiorari granted and case reversed for further proceedings 350 U.S. 892, 76 S. Ct. 152; Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Company, 1 Cir., 1956, 233 F.2d 85; Milk and Ice Cream Drivers and Dairy Employees Union, Local No. 98 v. Gillespie Milk Products Corp., 6 Cir., 1953, 203 F.2d 650; Independent Petroleum Workers of New Jersey v. Esso Standard Oil Company, 3 Cir., 235 F.2d 401.

In the Syres case, supra, the plaintiffs were representatives of Local No. 254, which was composed of Negro employees of the Gulf Oil Corporation. They sought to enjoin the enforcement of and obtain a judgment declaring void a bargaining agreement which provided for two lines of seniority based upon race. The Court of Appeals for the Fifth Circuit affirmed the trial court's dismissal of the action for lack of jurisdiction. On certiorari to the United States Supreme Court, the decision was reversed and the case was remanded for further proceedings. 350 U.S. 892, 76 S.Ct. 152. The Supreme Court in its decision cited the following cases: Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283. These three cases are authority for the proposition that a federal court has jurisdiction to prevent racial discrimination practiced by labor unions. The question of a federal court's jurisdiction in a labor dispute to restrain picketing was not involved.

In the case of Local 205, etc., v. General Electric Company, supra [233 F.2d 90], it was held that the district court had jurisdiction to compel an employer to submit a dispute to arbitration in accordance with the terms of the collective bargaining agreement between the employer and a labor organization representing the employees. The Court recognized that a breach of a Collective bargaining contract involved a labor dispute where the controversy between the employer and the union concerned " 'terms or conditions of employment.' " Although the Court concluded that a "labor dispute" was involved, it distinguished an order to compel arbitration of an existing dispute from an injunction which prohibits or restricts unilateral coercive conduct of either party to a labor dispute. The Court said:

"Basically, it is the language and background of the Norris-LaGuardia Act itself which point to the conclusion that the restrictions of § 7 do not have to be met as a prerequisite to jurisdiction to grant an order compelling arbitration. Section 7 requires certain preliminary allegations and findings: a threat of unlawful acts leading to substantial injury to property, greater injury to complainant in denying relief than

to defendants in granting it, and the inability of the public officials charged with protection of property to furnish adequate protection. Procedural requirements include notice to said public officials and an undertaking for reimbursement by complainant and a surety. These provisions were obviously aimed to limit injunctions to cases involving violent or destructive acts. See also § 9. The enumerated requisites, which draw a logical line in relation to union conduct in strikes and picketing (and perhaps to some employer activities), are not at all compatible with the situation where one party merely demands that the other be compelled to arbitrate a grievance in accordance with a contract provision for arbitration, in which latter situation the required findings seldom, if ever, could be made either affirmatively or negatively. They just do not sensibly apply. We do not believe Congress intended § 7 in any case to be a snare and a delusion, holding out the possibility of jurisdiction but demanding for its exercise sworn allegations of inapposite facts." 233 F.2d at page 92.

In Milk and Ice Cream Drivers and Dairy Employees Union, Local No. 98 v. Gillespie Milk Products Corp., supra, the Court of Appeals for the Sixth Circuit held that a district court had jurisdiction to grant an injunction on behalf of a labor union against a corporate employer to prevent the employer's violation of a collective bargaining agreement with the union by reason of the employer's refusal to abide by and give effect to an arbitration award.

The case of Independent Petroleum Workers of New Jersey v. Esso Standard Oil Company, supra, which is also cited by plaintiff, holds that a district court has jurisdiction under Section 301 of the Taft-Hartley Act to decree specific performance of a provision in a collective bargaining agreement between a union and an employer which requires them, when a new job classification is established, to negotiate on the salary rate for such classification.

The foregoing cases are authority for the proposition that the Norris-LaGuardia Act has not withdrawn the jurisdiction of the federal courts from granting equitable relief merely because the suit concerned the subject of labor relations or because the parties were employer and employee. However, it is now well settled that Section 301(a) of the Taft-Hartley Act, 29 U.S.C.A. § 185(a), in conferring jurisdiction upon the district courts to entertain suits for violation of a contract between an employer and a labor organization, did not repeal or limit the ban of the Norris-La-Guardia Act against issuance of injunctions in "labor disputes" where there were no unfair labor practices on the part of the union within the meaning of said Act. W. L. Mead, Inc., v. International Brotherhood of Teamsters, etc., 1 Cir., 1954, 217 F.2d 6; In re Third Ave. Transit Corp., 2 Cir., 1951, 192 F.2d 971; Alcoa S. S. Co., Inc., v. McMahon, D.C. S.D.N.Y.1948, 81 F.Supp. 541, affirmed 2 Cir., 1949, 173 F.2d 567; Sound Lumber Co. v. Lumber & Sawmill Workers Local Union, D.C.N.D.Cal.1954, 122 F.Supp. 925; Associated Tel. Co., Ltd. v. Communication Workers of America, D.C.S. D.Cal.1953, 114 F.Supp. 334.

Although some Courts have ascribed to Section 301 of the Taft-Hartley Act the creation of substantive federal rights, Milk and Ice Cream Drivers and Dairy Employees Union, Local No. 98 v. Gillespie Milk Products Corp., 6 Cir., 1953, 203 F.2d 650; Shirley-Herman Co. v. International Hod Carriers, Bldg. & Common Laborers Union, 2 Cir., 1950, 182 F.2d 806, 17 A.L.R.2d 609, this theory was rejected by Mr. Justice Frankfurter in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510. Thus, although Section 301 of the Taft-Hartley Act creates a federal forum which might not have previously existed, it does not modify the prohibition against the issuance of injunctions in labor disputes as set forth in the Nor-

ris-LaGuardia Act. Plaintiff's right to an injunction in the case at bar basically depends upon whether or not a "labor dispute" exists within the meaning of said Act.

Defendant argues that even if the contract which the employer and union entered into on July 6, 1956 were an effective agreement, an injunction could not issue because a labor dispute has been created by the union's refusal to order the employees back to work and the employees' failure to return to work. The case of Alcoa S. S. Co., Inc., v. McMahon, D.C.S.D.N.Y.1948, 81 F.Supp. 541, affirmed 2 Cir., 1949, 173 F.2d 567 is cited in support of this contention. In the Alcoa case, one of the provisions of a collective bargaining agreement had been the subject of a dispute. The issue was resolved in an action for a declaratory judgment by a decree which adjudicated that, under the agreement, the employers had the right to assign more than eight men, out of a gang of twenty, for work inside the hold of a vessel in loading or unloading operations. Despite the adjudication of the Court and in defiance of the union officers, the employees refused to abide by their obligations under the collective bargaining agreement. The employers sought injunctive relief in aid of the declaratory judgment. The union did not oppose the issuance of an injunction. Nevertheless, the district court concluded that a "labor dispute" existed and that, therefore, an injunction could not be issued. In affirming the district court, the Court of Appeals, 2 Cir., 1949, 173 F.2d 567, said as follows:

> "* * * The defendants' position is that, in spite of the declaratory judgment, the refusal raised a 'controversy concerning the terms and conditions of employment,' which by definition is a 'labor dispute.' We agree with the defendants. If the plaintiffs were right, it would follow that, as soon as any controversy was decided by a court, it would cease to be a 'controversy,' and an injunction would be proper. It would therefore follow that the Norris-LaGuardia Act only applies to a 'labor dispute' before it had been decided; in short, an employer could not get a temporary injunction, but he could always get a permanent injunction." 173 F.2d at page 568.

■■ The Alcoa case, supra, is distinguishable from the instant case in that, unlike a declaratory judgment which juristically defines existing rights, a voluntary contract between an employer and the bargaining representative of its employees, which settles a dispute under a collective bargaining agreement, represents an affirmative commitment on the part of, and initiated by, the parties thereto. In signing the contract of July 6, 1956, the union representatives acted on behalf of the employees and their action was binding on said employees. 29 U.S.C.A. § 159(a). Assuming the contract to be valid and enforceable, it settled all the grievances between the parties and terminated the labor dispute. The union cannot now be heard to say that the dispute as to the binding effect of such agreement constitutes a "labor dispute." Neither does this application in this action grow out of a labor dispute. This issue is not such a question nor does it involve such a dispute. It grows out of a common question of contractual interpretation which is not at all peculiar to labor. Clearly, the question does not come within the terms of Section 113(c) of Title 29 U.S.C.A. defining "labor dispute."

It should also be noted that in the Alcoa case, supra, the basic argument which the union urged on appeal was that a Court did not have authority to order any union local to expel its members for non-performance of contract and that there was no showing that the union officials had the authority or the power to expel any of its members if they failed to comply with the declaratory judgment. None of the aforesaid issues are involved in the case at bar.

■ Defendant contends that the agreement of July 6, 1956, never became

effective because it was subject to ratification by the men in the shop. It is undisputed that defendant's representatives suggested that a clause to this effect be inserted in the contract. It is also undisputed that plaintiff rejected this suggestion and at no time did it agree that the contract was subject to ratification. Defendant's representatives were fully apprised of plaintiff's position when they signed and delivered the agreement. Parol evidence that a written contract should not become effective until the happening of some contingency is admissible when both parties have previously so agreed to such condition. Ware v. Allen, 128 U.S. 590, 9 S.Ct. 174, 32 L.Ed. 563; Fadex Foreign Trading Corporation v. Crown Steel Corporation, 272 App.Div. 273, 70 N.Y.S.2d 892, affirmed 297 N.Y. 903, 79 N.E.2d 739; 3 Williston on Contracts, Rev.Ed.1936, § 634; Restatement of Contracts, § 241. Since the parties had not previously agreed that the contract was to be subject to ratification by the employees, such ratification was not a prerequisite to its binding effect and parol evidence concerning statements made by defendant's representatives alone cannot be permitted to establish such a condition.

■ It is also contended by defendant that the contract never became operative because it provided that the agreement was not to become effective until Paragraph one had been complied with. It was agreed in Paragraph one that the employees were to return to work not later than July 10, 1956 and that prior to said date the defendant was to order its members to return to work. The employees failed to report to work and defendant never ordered them to return. Manifestly, defendant cannot set up its own failure to perform under the contract as a defense when plaintiff seeks to enforce its rights under said contract. It is clear that the parties understood when they signed the agreement that they were entering into a binding and enforceable contract. Consequently, compliance with Paragraph one was not a condition precedent to the validity of the agreement but was instead a condition precedent to defendant's right to compel performance on the part of the plaintiff. Upon the signing of the contract, defendant became obligated to order its men back to work. Legal rights and correlative duties had thus been created.

■ It is the opinion of this Court that it appears that the parties herein have settled their controversy pursuant to the agreement of July 6, 1956 and that there does not now exist a "labor dispute" within the meaning of Section 113 (c) of the Norris-LaGuardia Act. Pending the determination of this action, plaintiff will suffer irreparable injury unless an injunction pendente lite is granted. Accordingly, plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A. is granted to the extent that defendant, its members, servants, agents and other privies are enjoined (a) from representing that there exists a strike by plaintiff's employees or a labor dispute between plaintiff and such employees; (b) from picketing the premises of the plaintiff or any of its customers, suppliers or other person upon the pretext that such strike or labor dispute exists; and (c) from violating the terms of the agreement of July 6, 1956, except that this injunction shall in no way be construed as a directive to any employee to return to work, and the order entered hereon shall not so provide.

Plaintiff shall furnish a bond approved by this Court in the sum to be fixed in the order so as to indemnify defendant against any loss in the event that defendant shall ultimately succeed in the final disposition of this suit.

The foregoing constitutes the Findings of Fact and Conclusions of Law upon which this preliminary injunction is granted.

Settle order on notice.