**John SYRES and Louis J. Warrick, Appellants,**

v.

**OIL WORKERS INTERNATIONAL UNION, LOCAL 23, et al., Appellees.**

**No. 16539.**

United States Court of Appeals Fifth Circuit.

July 18, 1958.

Rehearing Denied Aug. 29, 1958.

Robertson L. King, Dent, King, Walker & Wickliff, Houston, Tex., for appellants.

Dixie & Schulman, Chris Dixie, Houston, Tex., Quentin Keith, Beaumont, Tex., Joseph H. Sperry, John E. Bailey, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

Local 254 of the Oil Workers International Union[1] and John Syres and Louis J. Warrick, individually and as representing a class similarly situated, filed this action in May 1954 against Oil Workers International Union, Local 23,[2] certain of its officers, as individuals and as representing members of a class, and the Gulf Oil Corporation. The complaint alleged that the collective bargaining agreement of April 17, 1954, with Gulf as employer, divided the jobs between the races and discriminated against Negroes. The complaint further charged that all of the defendants had conspired to deprive plaintiffs and other Negroes represented by them of their rights guaranteed under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. and under the Constitution of the United States. The district court at first dismissed the action for lack of jurisdiction, and this Court affirmed, the present writer dissenting. Syres v. Oil Workers International Union, Local No. 23, 5 Cir., 1955, 223 F.2d 739. The Supreme Court, in a brief per curiam, 350 U.S.

1. Now Local 4–254, Oil, Chemical and Atomic Workers International Union.

2. Now Local 4–23, Oil, Chemical and Atomic Workers International Union.

892, 76 S.Ct. 152, 100 L.Ed. 785, granted certiorari, reversed the judgment of this Court, and remanded the case to the district court for further proceedings, citing: Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

The collective bargaining agreement of April 17, 1954, claimed to be discriminatory was of eighteen months' duration. On March 14, 1956, a new labor contract covering the same employees was executed. This case was not reached for trial until October 1, 1956, about six months after the execution of the 1956 contract. The plaintiffs did not attack that contract as discriminatory or otherwise illegal, and, indeed, made no reference to it, but went to trial upon their original complaint. The defendant Gulf Oil Corporation moved to dismiss the action because it had become moot, and the district court sustained that motion "to the extent that all causes of action and claims for relief contained in Plaintiffs' said complaint save and except those relating to Plaintiffs' claim for monetary damages be and the same are hereby dismissed." The appellants do not complain of that ruling.

As a suit for damages, the case was tried before a jury. At the conclusion of the evidence, Local 254 withdrew as a party plaintiff. The district court submitted the case to the jury on behalf of the two individual plaintiffs and the class which they represent. The jury returned its verdict in favor of the defendants, on which judgment was entered. From that judgment the plaintiffs Syres and

Warrick appeal, specifying as errors certain rulings upon the evidence and in the court's instructions to the jury, among others that the court erred "in its manner of instructing the jury in the question of damages."

Each of the defendants had moved for a directed verdict on the ground that there was no competent evidence of damage suffered by any plaintiff or by any member of the class, and that the evidence was insufficient to warrant the submission of any damages on behalf of any person. On such motions, the district court reserved its decision under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C. During the absence of the jury, however, the district court clearly indicated to counsel its opinion that the defendants were entitled to a directed verdict because no damages had been proved.[3]

In addition to relief by way of injunction, now moot, the complaint had contained a general prayer for damages: "Plaintiffs further pray that this Court award them judgment for damages in the amount of one hundred fifty thousand dollars ($150,000.00)."

The theory upon which the plaintiffs undertook to establish their claim for damages is thus described in one of their requested but refused instructions:

"The amount, of money, if any, to which the plaintiffs, Syres, Warrick, and those whom the named plaintiffs represent are entitled to is the difference between the average wage in the Operating Mechanical Division and that of the Labor Division, said average being the total of all salary items in either division, divided by the number of salary items in either division, times forty

3. "The Court: The Court has indicated in conference with counsel for all parties since the close of the evidence in this case, the Court is of the fixed opinion that your objections to the Charge on damages insofar as it points out that there is no evidence in this record to which the jury could calculate the damages is well taken.
"Mr. Keith: Well, I understand.
"The Court: And that is why the

Court has thought all along you were entitled to an instructed verdict in this case, but since the Court is going to submit the case to the Jury, I will overrule your objection and the objections of the remaining Defendants and the objections from the Plaintiffs. Mr. Marshall, tell the jury to go to the jury room and start its deliberations."

(40) (hour work week), times the number of weeks the contract of April 17, 1954, was in force, multiplied by the number of men that would have received such vacancies but for the contract of April 17, 1954."

4. "Q. And could you determine—and this is on the question of how you have estimated the damages that you have asked for in this suit, how have you estimated the damages with regard to the vacancies that have occurred? A. Well, I worked it out according to the division and I take a figure that any operating mechanical division that the total salaries divided by the hours run into $94.92. And, divide it by the number of salary items that we have accumulated within the provision would be $41.00 which would give an average of $2.32, an average in the operating mechanical division per hour.

"Q. Now, let me stop you there, you say that the average wage per hour in the operating mechanical division is what? A. $2.32.

"Q. $2.32? A. And in the labor division, the average would be a $1.56. Average hourly wages.

"Q. All right. Now, that would give you a difference of what as between the average salary of the two? A. That would give me a difference of $.76.

"Q. Difference of $.76? A. And I figured also that the number of hours worked per week at $.76 per hour will give me $30.40 a week.

"Q. What does that represent, the $30.40? A. Well, that give me a difference in the rate between the operating mechanical division and the labor division provided my men had accepted this position and gotten a promotion.

\*      \*      \*      \*      \*

"Q. Go ahead? A. On the average of thirty dollars and forty cents per week, that is, for the two year period which is one hundred and four weeks, I figure it was $3,161.60.

"Q. Now, is that the figure per man? A. That is the figure per man.

"Q. Would that be a figure or at least would that be the total figure each man would have lost in operating mechanical division by not having been able to avail themselves of the opportunity of having worked? A. That is correct.

"Q. And how many men have you said wished to avail themselves of that opportunity? A. Well, I am thinking that the amount of seniority that my men would have had if the five hundred of them would have been eligible for these

Testifying in support of that theory, Syres calculated the recoverable damages to be $1,000,580.80.[4] On cross-examination Syres expressed his hope that, in some manner not provided in the judgment sought, any recovery might be distributed through the local union.[5]

promotions if they had had an opportunity and I multiplied five hundred times the $3,161.60 and I found the figure of one million, five hundred and eighty dollars and eighty cents, that is the total.

"Q. That is—that would be sufficient damages in this case which—A. (Interrupting) That is correct.

"Q. Which each man would have suffered? A. That is correct.

"Q. As an individual or total? A. That is right.

"The Court: That is just about ten times as much as you sued for.

"Mr. King:

"Q. Can you give some explanation why the difference between the amount that you originally calculated, could you say? A. You mean in the suit?

"Q. Yes? A. Well, first of all, we had no idea that it would run for this period of time, you see. We was thinking that it will be over in two or three months and we felt like we were justified in asking for a hundred and fifty thousand dollars."

5. "Q. Well, now, who is going to get this money, John? A. Well, the local union if we get any.

"Q. You mean this million five hundred eighty thousand eight hundred dollars [sic] or you mean the $150,000? Who is going to get either or both? A. Well, the local union will get it.

"Q. And you are what in that local union? A. I am Secretary-Treasurer.

"Q. Well, who handles the money? A. I handle the money.

"Q. You handle the money? A. That is right.

"Q. Well, now, you are not going to give it to the members, if you get all of that money, you are not going to give it to the members? A. Well, that is going to be up to the members. If they want it, why, certainly.

"Q. But you are going to collect it yourself? A. If there is any I would like to collect it."

\*      \*      \*      \*      \*

"Q. But you are going to collect it and still you say that you are going to collect it for the benefit of the union or for the benefit of your members? A. Well, the members of the union, the

The district court charged the jury that in the event of a verdict for the plaintiffs the damages should be determined on the basis of the actual pecuniary loss suffered by the individual plaintiffs or by those whom they represent.[6] To that charge, the plaintiffs objected on the ground "that the proof was to be according to each individual man rather than as computed on an average basis."

Syres admitted that he did not bid for any job in the Operating-Mechanical Division, and that he had no knowledge of Warrick having done so. Warrick did not testify. There was a total absence of proof that any particular individual had suffered any damage by reason of the alleged discriminatory provisions of the 1954 contract.

Wages are, of course, separately and individually earned. Promotions and failures to promote are peculiar to the individual employee. There was no claim nor evidence that any of such individually-owned rights had been transferred either to the local union or to the plaintiffs. No law has been cited, and we have been unable to find any which would permit the plaintiffs to maintain this action for damages vicariously or to recover on some theory of averages. When, if the proper parties were before it, the court could award equal and exact justice,

---

funds are all allocated. That is how it is distributed.

"Q. Yes. And if those, now, those members are individuals, aren't they? A. Yes.

"Q. And if any money comes in there it comes in for their benefit? A. Yes."

6. "Now, in the event your verdict is to be for the Plaintiffs, you should then consider the amount of damages, if any which the Plaintiffs are entitled to recover herein. If your verdict is for the Defendants you need not consider the question of damage or the cause any further. If you find and believe from a preponderance of the evidence that the Plaintiffs, John Syres, Louis J. Warrick, and those whom they represent or either of them sustained actual pecuniary loss proximately caused by the wrongful acts of the Defendants, if you find the Defendants guilty of such wrongful act, you should find and declare the sum of money, if any you find from a preponderance of the evidence that would fairly and reasonably compensate them or either of them and each of them by such loss, if any, they have suffered.

"Now, in considering this matter, you should consider the following items and none other; first, the existence of vacancies to which the Plaintiffs or any of them and those whom they represent were refused promotion solely because of race. Two; the existence of vacancies to which the Plaintiffs or any of those whom they represent would have been entitled to but for the contract of April 17, 1954; and, the actual amount of money that the Plaintiffs or any of them whom they represent lost by reason of being deprived of those jobs solely because of their race.

"Now, to illustrate what the Court has last stated, I give you this example not meaning to convey to the jury that the Court believes from the evidence in this case any such situation exists, but solely for the purpose of illustration. Suppose one John Jones, we will say, a negro member of 254 and an employee of the Gulf Oil Corporation refinery in question desired to bid on a job in the operational mechanical department and a vacancy in the operational and mechanical department occurred and John Jones, did, in fact, bid on that job and but for his race and the April, 1954, contract, he would have gotten that job. Then, to determine the amount of damages that John Jones sustained by reason of not getting that job on account of his race, you would determine from the evidence the difference between the wage he was being paid in the labor division and the wage he would have been paid in the operational mechanical division had he been given the job for the remainder of the term of the April, 1954, contract existing from the date he would have gotten that job and the expiration date of that contract. That would be the amount of damages that John Jones would be entitled to recover under such circumstances. And, of course, a similar statement with reference to the other negro employees of Gulf Oil Corporation in the same position, of course, would apply.

"And your verdict if to be for the Plaintiffs and you do find the Plaintiffs or those whom they represent have suffered damages will be for the Plaintiffs in the aggregate amount of the damages you find that the Plaintiffs or those whom they represent have sustained."

why should it be required to render some rough or approximate judgment, rusticum judicium?

It is not enough to say that the right not to be discriminated against on account of race is joint or common and that a class action is maintainable under Rule 23(a), Federal Rules of Civil Procedure. Granted arguendo, it nonetheless remains true that in such an action the class can obtain only that relief to which it is entitled. For example, here, the enforcement of the alleged discriminatory contract might have been enjoined if it had not expired and been replaced by one to which there was no objection. All that would be settled in such a class action is that Negroes as a class may not be excluded from jobs or promotion lists, may not be discriminated against because of their race or color. The necessary qualifications to hold any job or to merit any promotion are personal. A familiar analogy is supplied in school segregation cases, where, color aside, each individual must have the necessary qualifications to enter any particular school or college, and that is a matter which cannot be decided in the absence of the individual as a party.

"* * * The representatives of the University seem to be apprehensive that a judgment in favor of all Negroes in North Carolina who may apply for admission to the University may deprive the Board of Trustees of their power to pass upon the qualifications of the applicants. Such is not the case. The action in this instance is within the provisions of Rule 23(a) of the Federal Rules of Civil Procedure because the attitude of the University affects the rights of all Negro citizens of the State who are qualified for admission to the undergraduate schools. But we decide only that the Negroes as a class may not be excluded because of their race or color; and the Board retains the power to decide whether the applicants possess the necessary qualifications. This applies to the plaintiffs in the pending case as well as to all Negroes who subsequently apply for admission." Frasier v. Board of Trustees, D.C.M.D.N.C.1955, 134 F. Supp. 589, 593, affirmed 350 U.S. 979, 76 S.Ct. 467, 160 L.Ed. 848.

■ Damages may sometimes be recovered in a class action, but where the damages, if recovered, would be in different amounts to separate individuals, the persons entitled thereto must be made parties or intervenors before the damages can be awarded.[7]

■ The appellants properly emphasize in brief "that the plaintiffs are only desirous that they be considered in their promotional qualification with the racial tag removed. Nothing more." It would seem to follow that any recovery of damages for discriminatory denial of advancement should be not for Negroes as a class, but on behalf of the individual employee.

■ None of the excluded evidence would have supplied the insufficiency in the proof of damages. On that issue the defendants would have been entitled, in the event of an adverse verdict, to judgment non obstante veredicto. Other claimed errors are, therefore, immaterial. The judgment is

Affirmed.

7. Alabama Independent Service Station Ass'n v. Shell Petroleum Corporation, D.C.N.D.Ala.1939, 28 F.Supp. 386, 390; Weeks v. Bareco Oil Co., 7 Cir., 1941, 125 F.2d 84, 91; Farmers Co-op. Co. v. Socony-Vacuum Oil Co., 8 Cir., 1942, 133 F.2d 101, 105; Citizens Banking Co. v. Monticello State Bank, 8 Cir., 1944, 143 F.2d 261, 264; Oppenheimer v. F. J. Young & Co., 2 Cir., 1944, 144 F.2d 387, 390; Kainz v. Anheuser-Busch, Inc., 7 Cir., 1952, 194 F.2d 737, 740, et seq.; Hughes v. Encyclopaedia Britannica, 7 Cir., 1952, 199 F.2d 295, 300; Hurd v. Illinois Bell Telephone Co., 7 Cir., 1956, 234 F.2d 942, 944.