**Art JOHNSTON, Appellant,**

**v.**

**Hugh EARLE, Collector of Internal Revenue, Walter S. Shanks, Irwin Borthick and Irving H. Curran, Appellees.**

**No. 14951.**

United States Court of Appeals Ninth Circuit.

Feb. 28, 1957.

Warde H. Erwin, Barzee, Leedy & Erwin, Portland, Ore., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott and George F. Lynch, Attys., Dept. of Justice, Washington, D. C., Clarence E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Ore., for appellees.

Before DENMAN, Chief Judge, and POPE and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

Johnston, a citizen of the State of Oregon, appeals from a judgment in a suit against appellees, also citizens of Oregon, each holding offices in the Internal Revenue Bureau. The judgment held that appellant could not recover on his complaint that defendants had tortiously seized and converted to their own use a caterpillar tractor belonging to Johnston, because the evidence failed to show they were not entitled to do so in their official capacities as federal revenue officers acting in a federal tax levy.

The controlling matter of this appeal is the question of jurisdiction. It is not a diversity case. The question is whether the acts of the appellees violated the Federal Constitution or federal law, or are they only a violation of a state law against tortious conversion. There was

a pretrial at which the government's officers' contention of lack of jurisdiction was stated as follows:

"Contentions of Defendants. 1. Neither diversity of citizenship nor a substantial federal question exists in this cause and therefore the court does not have jurisdiction of the cause. This is not a cause arising under 28 U.S.C. § 1331, 28 U.S.C. § 1340, 28 U.S.C. § 1356 or the laws or constitution of the United States [as contended by plaintiff]. The issue of jurisdiction should be segregated and determined before any of the other issues are tried."

The court held it had jurisdiction.

However, when these federal officers had secured a favorable judgment that their acts were not illegal, they abandoned their contention that the court lacked jurisdiction of the subject matter of the case and in their brief on appeal state the "sole issue"[1] *here* is whether the district court properly determined the merits. Such an abandonment of the contention of lack of jurisdiction cannot create it where absent, however, pleasing to these office holders it would be if we sustained their successful contentions on the merits below. We agree that the several grounds of jurisdiction claimed by Johnston are not valid.

A. *Jurisdiction of the claim based on a tortious conversion under the Oregon law is not conferred on the federal courts by 28 U.S.C. § 1356.*

This section provides:

"§ 1356. *Seizures not within admiralty and maritime jurisdiction.* The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction."

Here the complaint alleges that the seizure was *not* under any law of the United States. The law was first stated in Section 9 of the Judiciary Act of 1789, 1 Stat. 77, as follows: "the district courts * * * shall also have exclusive original cognizance of all seizures on land * * * and of all suits for penalties and forfeitures incurred, under the laws of the United States."

That the federal courts had no jurisdiction under it for damages for conversion was early determined in the case of Slocum v. Mayberry, 1817, 2 Wheat. 1, 15 U.S. 1, 4 L.Ed. 169. There, as here, a seizure had been made of certain cargo on a vessel by the United States surveyor of customs under the direction of the director of customs. The cargo owners brought an action in replevin in the state court of Rhode Island for the restoration of the cargo.

The Supreme Court sustained the Rhode Island court in holding that, in the absence of authority under the laws of the United States to seize the cargo, its owners could replevy it in a state tribunal. The Supreme Court continued to state what is obvious from the face of the statute:

"If the officer has a right, under the laws of the United States, to seize for a supposed forfeiture, the question, whether that forfeiture has been actually incurred, belongs exclusively to the federal courts, and cannot be drawn to another *forum;* and it depends upon the final decree of such courts, whether such seizure is to be deemed rightful or tortious. If the seizing officer should refuse to institute proceedings to ascertain the forfeiture, the court may, upon the application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the seizure. And if the seizure be finally ad-

---

[1] "Summary of Argument. *The sole issue herein is* whether a Collector and Deputy Collectors of Internal Revenue may be held liable for damages for the alleged unlawful conversion of certain property (a caterpillar tractor) of appellant, where the acts of the officials in levying upon the property were performed entirely within the scope of the authority vested in them by law." [Emphasis supplied.]

judged wrongful, and without reasonable cause, he may proceed, at his election, by a suit at common law, or in the admiralty, for damages for the illegal act. *Yet, even in that case, any remedy which the law may afford to the party supposing himself to be aggrieved, other than such as might be obtained in a court of admiralty, could be prosecuted only in the state court. The common-law tribunals of the United States are closed against such applications, were the party disposed to make them.*" [Emphasis supplied.] 2 Wheat. 9, 15 U.S. at 9.

B. *Jurisdiction for the claim of tortious conversion is not created by 28 U.S.C. § 1340.*

This statute provides:

"§ 1340. *Internal revenue; customs duties.* The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court."

The complaint's claim for recovery of damages for the tortious conversion of of the appellant's property by defendants is not one "arising under any Act of Congress providing for internal revenue." The basic theory of the complaint is not the return of federal taxes alleged to have been wrongfully assessed as in Roybark v. United States, 9 Cir., 1954, 218 F.2d 164; Loetscher Co. v. Birmingham, D.C.Iowa 1950, 95 F.Supp. 892, affirmed, 8 Cir., 1951, 188 F.2d 78, or for the return of property wrongfully seized as in Stuart v. Chinese Chamber of Commerce, 9 Cir., 1948, 168 F.2d 709. The recovery sought is solely for a state tort by one citizen of the state against other citizens of the same state.

C. *Nor is the jurisdiction in the United States District Court created by 28 U.S.C. § 1331.*

We do not think that the district court was entitled to determine the merits of the issues of fact presented by the complaint under Title 28 U.S.C. § 1331. This section reads:

"§ 1331. *Federal question; amount in controversy.* The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

It is clear that the mere fact that a suit is against a federal officer does not support original jurisdiction thereof in the United States district courts on the ground that it is a case arising under the laws of the United States within the meaning of this section. This necessarily follows from Section 1442, Title 28 U.S.C., which provides for the *removal by the defendant* of such a suit from a state court to a federal district court where the act complained of is claimed to have been done under the authority of the United States. Where Congress has intended to create original federal jurisdiction over suits against certain types of federal officials, such as United States Marshals, it has expressly provided for such jurisdiction by statute. See, e.g., 28 U.S.C. § 544; Bedenbaugh v. National Surety Corporation, 5 Cir., 1955, 227 F.2d 102. It is not contended that any such special statute is applicable here.

Nor can jurisdiction be sustained on the ground that the plaintiff's complaint alleges that defendants may plead in their answer that their acts were within the scope of their authority as federal officers. Skelly Oil Co. v. Phillips Petroleum Co., 1950, 339 U.S. 667, 672, 70 S. Ct. 876, 94 L.Ed. 1194.

Jurisdiction in the present case, therefore, can be sustained only if, by his allegation that the acts of the appellees "deprived plaintiff of the property without just compensation and without the process of law contrary to the Constitution of the United States", appellant has asserted a federal cause of action. Of course, courts have jurisdiction to determine whether or not the subject matter

of the complaint presents a cause which they can entertain. The Fair v. Kohler Die & Specialty Co., 1913, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716.

This is not a case like Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, where the district court decided it lacked jurisdiction even to consider whether it had jurisdiction of the subject matter of the complaint. Here the district court decided it had such jurisdiction,[2] and we are called upon to determine whether the tortious taking of property by federal officials acting beyond the scope of their authority which undoubtedly is a tort cognizable in a state court also creates a cause of action cognizable in the United States District Court because it is alleged this action violates the Fifth Amendment.

In Bell v. Hood, the refusal of the district court to consider this question, and its affirmance by the court of appeals[3] was reversed, and the cause returned to the district court to determine whether the complaint stated a federal cause of action.

On its return to the district court, that court, in a very able opinion by Judge Mathes, held that no federal cause of action existed for the acts of federal officials violating the Fourth and Fifth Amendments.[4] His reasoning is that the due process clause of the Fifth Amendment applies only to the federal government,[5] and not to individuals.[6]

In fine, the federal government has created no cause of action enforceable in its courts for such torts under the state law, and hence the district court here lacked jurisdiction of the subject matter.

Judgment is reversed, and the district court ordered to enter an order dismissing the action for failure to state a claim arising under the laws of the United States.

CHAMBERS, Circuit Judge (concurring).

I believe that here we have a case where the Congress by legislation could give us jurisdiction. I do not believe that it has. Plaintiff seeks no relief against the United States government. He wants it off of the private hide of gov-

2. Unlike Lowe v. Manhattan Beach City School District of Los Angeles County, 222 F.2d 258, 9 Cir., 1955, where the district court held it had no jurisdiction.

3. Bell v. Hood, 9 Cir., 1945, 150 F.2d 96.

4. Bell v. Hood, D.C.S.D.Cal.1947, 71 F. Supp. 813.

5. That the Fifth Amendment applies only to the acts of the federal government is settled beyond doubt. See, e. g., Spies v. People of the State of Illinois, 1887, 123 U.S. 131, 166, 8 S.Ct. 21, 31 L.Ed. 80; Burdeau v. McDowell, 1921, 256 U.S. 465, 476, 41 S.Ct. 574, 65 L. Ed. 1048. In Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, the Court said: " * * * [F]or more than one hundred years, ever since Barron v. [Mayor and City Council of City of] Baltimore [1833], 7 Pet. 243 [32 U.S. 243], 8 L.Ed. 672, one of the principles of our Constitution has been that these [the Fourth and Fifth] Amendments protect only against invasion of civil liberties by the Government whose conduct they alone limit. Brown v. Walker, 161 U.S. 591, 606, 16 S.Ct. 644, 650, 40 L.Ed. 819; Jack-

v. [State of] Kansas, 199 U.S. 372, 380, 26 S.Ct. 73, 75, 50 L.Ed. 234; Twining v. [State of] New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97." 322 U.S. at page 490, 64 S.Ct. 1083.

6. Mr. Justice Black stated in Bell v. Hood that "whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments" is a question which "has never been specifically decided by this Court." 327 U.S. at page 684, 66 S.Ct. 777. In Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, however, the Supreme Court clearly indicated that there was no civil action for damages based upon the Fourth Amendment against officers who had violated it seizing plaintiff's property. Speaking of the possible nonfederal liability of the offending officers, the Court said: "What remedies the defendant may have against them we need not inquire, as the 4th Amendment is not directed to individual misconduct of such officials. Its limitations reach the Federal government and its agencies." 232 U.S. at page 398, 34 S.Ct. 346.

ernment officials. The basis for this is not in the Constitution per se.

If my associates mean that the district court did not have jurisdiction because of, or in the sense of, no claim being stated under the Constitution or Laws of the United States, I concur. I think that is what they mean.

While we do not here have the matter of collateral attack, I do believe the judgment as rendered, unappealed from, would be valid as against collateral attack. In that sense I think there was "jurisdiction."

My thoughts herein closely coincide with those expressed in the very fine opinion of Judge Mathes in Bell v. Hood, D.C.S.D.Cal., 71 F.Supp. 813.