**Donald Ernest KOCH, Plaintiff,**

v.

**Rudolph ZUIEBACK et al., Defendants.**

**Civ. No. 1304–60.**

United States District Court
S. D. California,
Central Division.

May 24, 1961.

---

J. B. Tietz, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., by Frederick M. Brosio, Jr., Asst. U. S. Atty., Los Angeles, Cal., for defendant, Rudolph Zuieback.

THURMOND CLARKE, District Judge.

This matter is before the court on motion of defendant Zuieback to dismiss the action on the ground that plaintiff's complaint fails to state a claim upon which relief may be granted. Expressing no opinion on the merits of plaintiff's claim, the court is loath to appear to condone the lengthy history of continued harassment alleged in this case by denying plaintiff his day in court. Nevertheless, it must be concluded, albeit reluctantly, that the overwhelming weight of authority dictates that defendant's motion to dismiss must be granted.

Plaintiff brought this civil action for damages and a declaratory judgment against Rudolph Zuieback, chairman of Local Board 103, Selective Service System, Los Angeles, California, and other individuals connected with the Selective Service System. Only Zuieback has been served and this motion to dismiss is made solely on his behalf. The complaint alleges that the defendants, although acting under color of federal authority, acted in excess of said authority, and wilfully, maliciously and with intent to injure plaintiff, conspired to deprive him of due process of law during the major portion of his processing by the Selective Service System. The prayer is for a judgment declaring that the local board acted illegally when it classified plaintiff in Class IV–F and thereafter in Classes I–A, I–O and III–A, and further declaring that plaintiff is entitled to a classification of V–A; and for damages.

Plaintiff's difficulties with the Selective Service System date back to October, 1948, when he registered as required by law. On July 11, 1950, he was classified as I–A by Local Board 103. Apparently, plaintiff was not then aware of the proper procedures for appeal. Plaintiff attempted to obtain a reclassification as a conscientious objector, but his requests were not timely and were refused. Plaintiff subsequently refused to be inducted into the Armed Services, and as a result was convicted for said act of refusal and sentenced to a four-year term of imprisonment to be served in the United States Penitentiary, McNeil Island, Washington.

On February 16, 1951, the Warden of said institution notified the Local Board that plaintiff had been received at said prison, in order to inform the Board of his whereabouts; the Board acknowledged this notification. Thereafter, on March 26, 1951, "consonant with defendants' plan to pursue and hound plaintiff", the Local Board mailed plaintiff a Notice of Classification, indicating that he had been reclassified in Class IV–F, directing the same to his obsolete address, "despite * * * the fact that defendants knew plaintiff was in prison and knew his prison address." Plaintiff did not receive actual notice of this classification until March 28, 1955.

Plaintiff was released on parole on February 10, 1953. The Local Board inquired of the prison authorities as to his whereabouts on February 15, 1955, and

was referred to the Chief U. S. Probation Officer in Los Angeles. The Board communicated with the Probation Office, but failed to obtain plaintiff's current address. One day after his official release from parole supervision, the Board mailed a I–A classification to the aforementioned obsolete address; this classification was returned to the Board by the Post Office.

The Board did not attempt to locate plaintiff until after the 10 day appeal period had expired. At that time, the Board obtained plaintiff's current address from the Parole Officer and sent plaintiff a change of address form to be returned by March 31, 1955.

During this period, plaintiff had not communicated with the Board, since he had reached the age of 26 in 1952 and, not being aware of the IV–F classification issued in 1951, which reclassification had the effect of extending plaintiff's eligibility to age 35, believed he was no longer eligible under the Selective Service System.

Upon receiving the change of address form, plaintiff personally appeared at the office of the Local Board on March 28, 1955, in order to ascertain why the Board still claimed jurisdiction over him. At that time, he was handed a duplicate copy of the I–A classification issued on March 9, 1955, and upon discussing that classification with the clerk, learned for the first time of the IV–F classification which had been issued while he was in prison.

On April 1, 1955, plaintiff made written protest of the IV–F and I–A classifications, maintaining that he should be given the overage classification (V–A) or, failing that, the conscientious objector classification (I–O). He further requested a hearing before the Local Board.

On June 7, 1955, plaintiff had a hearing before the Local Board. At this time, he was denied the right to assistance by an attorney and denied the use of two witnesses, one of whom was a shorthand reporter. He further alleged that he was "denied the right to discuss his file and his evidence". As required

by the Local Board, plaintiff made a summary of this hearing and filed it with the Board, and the Board also filed a summary transcript. Plaintiff also submitted other written evidence.

Plaintiff was classified in Class I–O on July 12, 1955. He was granted an extension of time to appeal from the denial of his request for V–A classification, and he formally appealed therefrom.

In October, 1957, the Local Board reopened his classification on its own initiative and on December 10, 1957, reclassified him as I–O. He again requested a hearing, at which he presented some evidence, but the classification was again unchanged. He again made timely appeal and on March 3, 1958, the Appeal Board retained plaintiff in Class I–O.

Meanwhile, on November 12, 1957, plaintiff informed the Local Board that he had acquired a wife and dependent stepchild but specifically disclaimed interest in obtaining a III–A classification (registrant with dependent), again maintaining his right to a V–A classification. On March 11, 1958, the Local Board reclassified plaintiff in Class III–A.

In September, 1959, plaintiff informed the Local Board that his wife had filed suit for divorce and on September 15, 1959, he was reclassified as I–O. He again protested the classification and requested a hearing. At the hearing, the Board again denied plaintiff the opportunity to discuss his V–A classification and routinely classified him as I–O. Plaintiff again appealed and again his appeal was rejected.

At the time of the filing of this action, plaintiff was still retained in Class I–O, which made him liable for two years of civilian service. However, plaintiff was at no time ordered to report for service.

The gist of plaintiff's action is that defendants wilfully and arbitrarily refused to consider the evidence presented by plaintiff regarding his age, the IV–F classification and his right to a V–A classification, despite the fact that there was no evidence to controvert his contentions; that in so acting defendants acted wilfully and maliciously; that their acts

constituted an abuse of discretion and misuse of power, and hence defendants exceeded their authority and jurisdiction; and that by said acts defendants deprived plaintiff of his right to a fair hearing as required by the due process clause of the Fifth Amendment. Plaintiff further alleges that defendants knew that plaintiff had entered a partnership and knew that their actions kept plaintiff in a state of uncertainty with respect to his business affairs. Further, plaintiff alleges that defendants endeavored to prevent plaintiff from fully presenting his case in order to "entrap him and again cause his imprisonment" and to endanger his liberty and ability to earn a living.

## I. *Plaintiff's Complaint for Declaratory Judgment*

██ It affirmatively appears from an affidavit of Edward A. Gibbs, Chairman of Local Board 103, submitted in support of defendant's motion to dismiss, that plaintiff reached the age of 35 on January 13, 1961, and that on January 17, 1961, he was given the V–A classification which he seeks in this action. This affidavit is uncontroverted and, by treating this portion of the motion to dismiss as a motion for summary judgment, may be considered by the court. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A.; and see Oppenheimer v. Stillwell, D.C.S.D.Cal.1955, 132 F.Supp. 761, 763. It is therefore abundantly clear that, whatever right to judicial review of a Selective Service classification plaintiff might ordinarily possess, the issue as to plaintiff's appropriate classification is now moot. Accordingly, summary judgment for defendants will be rendered on this phase of the case, as to the moving defendant and all defendants not heretofore served.

## II. *Plaintiff's Action for Damages*

Defendant Zuieback's motion to dismiss this portion of the case at bar is predicated on the theory that the complaint fails to state a claim upon which relief might be granted, in that: (A) this is not a case arising under the Con-

stitution and/or laws of the United States and no federal question is therefore presented; and (B) defendant, a federal officer, is immune from a suit for damages based on acts performed within the scope of his official authority and under color of his office. The court will consider the issues raised by defendant's motion in the following order: first, whether this court has any jurisdiction to consider this matter; second, assuming the initial existence of jurisdiction, whether a federal question is presented; and, finally, assuming the existence of a federal question, whether the moving defendant is immune from suit.

██ Since the federal claim urged by plaintiff does not appear to be immaterial or frivolous, this court has jurisdiction to ascertain whether or not a claim is stated on which relief might be granted. Bell v. Hood, 1946, 327 U.S. 678, 681 et seq., 66 S.Ct. 773, 90 L.Ed. 939, Id., D.C. S.D.Cal.1947, 71 F.Supp. 813, 815–816; Agnew v. City of Compton, 9 Cir., 1956, 239 F.2d 226, 229; Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 288–289.

### A. Does Plaintiff's Complaint Present a Federal Question?

Plaintiff's complaint attempts to invoke federal jurisdiction on the theory that this action arises under the First, Ninth, Tenth, Thirteenth and Fourteenth Amendments, and the due process clause of the Fifth Amendment to the United States Constitution. Plaintiff further claims that this action arises under the Civil Rights Act of 1870, now 42 U.S.C.A. §§ 1981 et seq., and particularly that section which is now 42 U.S.C.A. § 1985(3).

██ It is immediately and readily apparent that this complaint for damages against a federal official, whether acting within or without the scope of his authority, is not a case arising under the First, Ninth, Tenth, Thirteenth or Fourteenth Amendments. It is well settled that the guarantee of freedom of religion contained in the First Amendment grants no immunity from military service because of conscientious objection or religious calling. Tyrrell v. United

States, 9 Cir., 1953, 200 F.2d 8, 13, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346. The Ninth and Tenth Amendments, pertaining, respectively, to enumerated powers and powers reserved to the states, contain no provisions relevant to the case at bar, and could not conceivably be construed to authorize a suit for damages against an individual or federal official. Requiring military service of able-bodied individuals and civilian service of conscientious objectors does not violate the involuntary servitude provisions of the Thirteenth Amendment. Butler v. Perry, 1916, 240 U.S. 328, 333, 36 S.Ct. 258, 60 L.Ed. 672; Klubnikin v. United States, 9 Cir., 1955, 227 F.2d 87, 90, certiorari denied 350 U.S. 975, 76 S.Ct. 453, 100 L.Ed. 846, rehearing denied 351 U.S. 915, 76 S.Ct. 701, 100 L.Ed. 1449; Reese v. United States, 9 Cir., 1955, 225 F.2d 766, 773. And it is axiomatic that the prohibitions of the Fourteenth Amendment apply only in cases involving state action. See, e. g., Williams v. Yellow Cab Co. of Pittsburgh, Pa., 3 Cir., 1952, 200 F.2d 302, certiorari denied Dargan v. Yellow Cab Co. of Pittsburgh, Pa., 346 U.S. 840, 74 S.Ct. 52, 98 L.Ed. 361; Moffett v. Commerce Trust Co., 8 Cir., 1951, 187 F.2d 242, certiorari denied 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618; Oppenheimer v. Stillwell, D.C.S.D.Cal.1955, 132 F.Supp. 761.

■ The Due Process Clause of the Fifth Amendment Does Not Authorize a Civil Action for Damages Against a Federal Official.

Although the United States Supreme Court has never passed on the issue, the law is settled, in this Circuit at least, that an action for damages against a federal official whose acts constitute a denial of due process of law is not a case arising under the Fifth Amendment and presents no federal question. Bell v. Hood, D.C.S. D.Cal.1947, 71 F.Supp. 813, 816 et seq.; Johnston v. Earle, 9 Cir., 1957, 245 F.2d 793, 796.

■ In Bell v. Hood, supra, plaintiffs brought an action for damages against special agents of the Federal Bureau of Investigation for alleged violations of the Fourth and Fifth Amendments. Judge William C. Mathes reasoned that the Fourth and Fifth Amendments limit only federal action and not action by the states or by individuals. An action for damages against the United States is precluded by the doctrine of sovereign immunity and by the express provisions of the Federal Tort Claims Act (28 U.S. C. §§ 921, 931, 943 *). Insofar as defendants acted within the scope of their authority as federal officers, the doctrine of sovereign immunity protects them from a civil action for damages. Insofar as they exceeded that authority, they acted not as federal officers but as individuals. "But inasmuch as the prohibitions of the Fourth and Fifth Amendments do not apply to individual conduct, the Amendments themselves, when violated, cannot be the basis of any cause of action against individuals." 71 F.Supp. 813, at page 817. This decision was cited with approval by the Ninth Circuit in Johnston v. Earle, supra, wherein the court held that an action for damages against officers of the Internal Revenue Service for alleged conversion of plaintiff's property in violation of the Fourth and Fifth Amendments presented no federal cause of action.

■ No Federal Question is Presented Under 42 U.S.C.A. § 1985(3) by a Civil Action for Damages Against a Federal Official.

42 U.S.C.A. § 1985(3), in relevant part, provides as follows:

"If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engage therein

---

* 1948 Judicial Code, 28 U.S.C.A. §§ 1346, 1402, 2402, 2411, 2412, 2672, 2674–2676, 2680.

do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

This statute, together with numerous other civil rights provisions in our present law, was principally derived from the Act of April 20, 1871, 17 Stat. 13, and was enacted shortly after the Civil War in order to implement the then recent Thirteenth, Fourteenth and Fifteenth Amendments. The various provisions of the Civil Rights Act were adopted during the turbulent days of the Reconstruction Period, at which time their obviously loose and careless phraseology were scarcely considered by an inflamed and highly partisan legislature. For a survey of the legislative history of the Civil Rights statutes, see Collins v. Hardyman, 1951, 341 U.S. 651, 656–657, 71 S.Ct. 937, 95 L.Ed. 1253; Love v. Chandler, 8 Cir., 1942, 124 F.2d 785, 786; Byrd v. Sexton, 8 Cir., 1960, 277 F.2d 418, 426–427; Hardyman v. Collins, D.C.S.D.Cal. 1948, 80 F.Supp. 501, 505–506.

Therefore, although the Civil Rights statutes in general and § 1985(3) in particular are extremely broadly phrased, the fact that they were initially designed for a particular purpose, coupled with the fact of slipshod draftsmanship, has resulted in a deep suspicion of these laws and a judicial reluctance to apply them in any but the most limited situations. A study of the case law indicates that, after considerable initial use of these laws, they remained dormant for many years and then were revived to become the subject of extensive recent litigation. The results of this litigation indicate a virtually unanimous judicial tendency toward an extremely narrow interpretation and limited application of § 1985(3) and its fellow statutory provisions. For an excellent survey of recent case law, see Byrd v. Sexton, supra, 277 F.2d at pages 427 et seq; and see Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 289 et seq.

Since the Civil Rights Act and the constitutional amendments on which it is based were enacted in a racial context, one of the frequent methods of limiting § 1985(3) is to apply it only in cases involving racial issues. See, e. g., Byrd v. Sexton, supra, passim. However, the two most prevalent limitations placed by the courts on the applicability of § 1985(3) are: (1) that it is limited to situations in which there has been "state action" or action "under color of" state law; and (2) that an infringement of rights only gives rise to a cause of action for damages where the rights infringed are within the very narrow class of "rights pertaining to national citizenship".

Unlike, e. g., 42 U.S.C.A. § 1983, § 1985(3) is not specifically limited to acts committed "under color of" state law; rather, the actual language of the statute suggests that it applies in any situation where any two or more persons, be they individuals, state officials or federal officers, conspire to deprive any person of equal protection of the laws or of equal privileges and immunities under the laws. Nevertheless, the overwhelming weight of authority reads into § 1985(3) the limitation that, in order to give rise to a cause of action for damages, at least some of the persons conspiring must be acting under color of state law. Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 291, and cases collected at page 291, note 8; Byrd v. Sexton, 8 Cir., 1960, 277 F.2d 418, 423–424; Brewer v. Hoxie School District, 8 Cir., 1956, 238 F.2d 91, 104; Williams v. Yellow Cab Co. of Pittsburgh, Pa., 3 Cir., 1952, 200 F.2d 302, 307, certiorari denied Dargan v. Yellow Cab Co. of Pittsburgh, Pa., 346 U.S. 840, 74 S.Ct. 52, 98 L.Ed. 361; Moffett v. Commerce Trust Co., 8 Cir., 1951, 187 F.2d 242, 247; Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579, 581–582; Love v. Chandler, 8 Cir., 1942, 124 F.2d 785, 786; Viles v. Symes, 10 Cir., 1942, 129 F.2d 828, 831; Oppenheimer v. Stillwell,

D.C.S.D.Cal.1955, 132 F.Supp. 761, 763; Hardyman v. Collins, D.C.S.D.Cal.1948, 80 F.Supp. 501, 506–507; see, also, Collins v. Hardyman, 1951, 341 U.S. 651, 655, 659, 661, 71 S.Ct. 937, 95 L.Ed. 1253. Contra: Miles v. Armstrong, 7 Cir., 1953, 207 F.2d 284, 286, which, nevertheless, refused recovery by limiting § 1985(3) to cases involving deprivations of federal rights; Hardyman v. Collins, 9 Cir., 1950, 183 F.2d 308, 311, subsequently reversed by the Supreme Court.

This limitation to cases involving action under color of state law is derived in one or both of two ways. The more theoretical view reasons that while groups of individuals may *interfere* with the rights of other individuals, individuals, where unsupported by state authority, cannot impair civil rights because they cannot deprive other individuals of *equal protection of the laws* or equal privileges and immunities *under the laws*. See, e. g., Hardyman v. Collins, supra, D.C.S.D.Cal.1948, 80 F.Supp. 501, 506–507. The more pragmatic view is to the effect that since § 1985(3) was adopted to implement the Fourteenth Amendment, it is applicable only in those situations where the Fourteenth Amendment itself is applicable, i. e., in cases involving "state action" or action "under color of" state law. See e. g., Williams v. Yellow Cab Co. of Pittsburgh, Pa., supra, 3 Cir., 1952, 200 F.2d 302, 307, certiorari denied Dargan v. Yellow Cab Co. of Pittsburgh, Pa., 346 U.S. 840, 74 S.Ct. 52, 98 L.Ed. 361; Oppenheimer v. Stillwell, supra, D.C.S.D.Cal.1955, 132 F.Supp. 761, 763. Whichever rationale is adopted, it is settled law in this Circuit that state action is an essential prerequisite to a cause of action under § 1985(3), for our own Court of Appeals has recently and categorically stated: "We think it is now clear that an action under any of the Civil Rights statutes must allege acts done under color of state law, even though § 1985, Title 42 U.S.C.A. does not expressly contain this requirement." Hoffman v. Halden, supra, 9 Cir., 1959, 268 F.2d 280, 291.

In the case at bar, there is no suggestion whatever that defendant's acts were committed in connection with any state action or under color of any state authority. The same is apparently true of the other defendants who have been named but not served. The moving defendant, for example, was Chairman of plaintiff's Local Selective Service Board. As such, his actions could have been committed either as a federal official or under color of *federal* law, on the one hand, or as an individual, on the other. In either case, it is evident that the clear weight of authority compels the conclusion that § 1985(3) provides no right of action either against this moving defendant or against those defendants named but not heretofore served, and hence no federal question is here presented under that statute.

The second major limitation which the courts have placed upon the applicability of § 1985(3), as well as the other Civil Rights statutes, is that a right of action for damages may be maintained only if the rights allegedly infringed fall within the narrow category of rights "inherent in federal citizenship". Snowden v. Hughes, 1944, 321 U.S. 1, 6–7, 64 S.Ct. 397, 88 L.Ed. 497; Byrd v. Sexton, supra, 8 Cir., 1960, 277 F.2d 418, 424; Miles v. Armstrong, supra, 7 Cir., 1953, 207 F.2d 284, 286; Hardyman v. Collins, supra, D.C.S.DCal.1948, 80 F.Supp. 501, 504 et seq. The rights, privileges and immunities which have been held to stem from the United States Constitution and inhere in federal citizenship include the right to assemble and petition Congress for a redress of grievances, the right to discuss national legislation and national affairs, the right to vote in national elections, the right to personal protection when in federal custody, the right to practice law before federal courts and the right to move from state to state. Hardyman v. Collins, supra, 80 F.Supp. 501, 505, and cases cited. Rights outside this very narrow category are considered to be "personal rights" or rights "inherent in state citizenship" and for inva-

sions of such rights the individual must look to the state courts for redress. Hardyman v. Collins, supra. The reasons for this distinction have been variously stated, but the essential reason for the limitation is to preserve the delicate balance between the powers of the national government and the powers reserved to the states. Byrd v. Sexton, supra, 277 F.2d at page 429. Without this limitation, § 1985(3) would present serious constitutional questions. United States v. Harris, 1882, 106 U.S. 629, 635 et seq., 1 S.Ct. 601, 27 L.Ed. 290; Miles v. Armstrong, supra, 207 F.2d at page 286.

In the instant case, the rights which defendants have allegedly infringed are plaintiff's right to a fair hearing and due process of law before a federal administrative agency. It is further alleged that defendant's acts have jeopardized plaintiff's personal liberty and his right to conduct his business without harassment. No case has been discovered which is directly on point, and in view of the court's holding regarding the requirement and absence of state action, the court declines to categorize these rights one way or the other, except to indicate the view that they are not clearly precluded from the category of rights inherent in national citizenship.

## B. Is Defendant Immune from Suit?

 Because of the court's holding that no federal question is presented by plaintiff's complaint, it is unnecessary to undertake a lengthy discussion of the principle of official immunity. Suffice it to note that in the event that a federal question has been presented, a reading of the complaint in this case compels the conclusion that all of the defendants named acted well within the scope of their authority as outlined in the Selective Service statutes and the Regulations promulgated thereunder. It is well settled that local draft board officials, as well as other "lower level" federal officials, are protected by the doctrine of sovereign immunity, provided they act within the scope of their authority. So long as they do not exceed their author-

ity, the motives with which they perform their duties are irrelevant. Finally, Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, notwithstanding, the Civil Rights statutes do not abrogate the traditional principles of immunity. (On the principle of immunity and its applicability in the instant case, see Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Bershad v. Wood, 9 Cir., 1961, 290 F.2d 714; Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280; O'Campo v. Hardisty, 9 Cir., 1958, 262 F.2d 621; Byrd v. Sexton, 8 Cir., 1960, 277 F.2d 418; Papagianakis v. The Samos, 4 Cir., 1950, 186 F.2d 257; Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579; Dodez v. Weygandt, 6 Cir., 1949, 173 F.2d 965; Gibson v. Reynolds, 8 Cir., 1949, 172 F.2d 95, certiorari denied 337 U.S. 925, 69 S.Ct. 1170, 93 L.Ed. 1733; Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, certiorari denied 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414; Toscano v. Olesen, D.C.S.D. Cal.1960, 189 F.Supp. 118; Oppenheimer v. Stillwell, D.C.S.D.Cal.1955, 132 F. Supp. 761. Contra: Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240, but Picking has been often criticized, explained, distinguished and questioned, and many cases have declined to follow the case since the Supreme Court decision in Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; see, also, Kozlowski v. Ferrara, D.C.S.D. N.Y.1954, 117 F.Supp. 650, for expression of a minority view regarding the principle of immunity.)

It Is Now Therefore Ordered that a summary judgment for defendants is hereby rendered as to all defendants named in plaintiff's complaint for a declaratory judgment.

It Is Further Ordered that defendant Zuieback's motion to dismiss plaintiff's complaint for damages is hereby granted, and the action for damages is hereby dismissed as to defendant Zuieback.

It Is Further Ordered, on the court's own motion, that plaintiff's complaint for

**660**

damages is hereby dismissed as to all named defendants not heretofore served.

It Is Further Ordered that the Clerk shall this day serve copies of this Opinion and Order by United States mail upon the attorneys for the parties appearing in this cause.