**Webster BIVENS, Plaintiff-Appellant,**

**v.**

**SIX UNKNOWN NAMED AGENTS OF the FEDERAL BUREAU OF NARCOTICS, Defendants-Appellees.**

**No. 328, Docket 32537.**

United States Court of Appeals
Second Circuit.

Argued Jan. 16, 1969.

Decided April 10, 1969.

Stephen A. Grant, New York City, for appellant.

Stephen R. Felson, Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Robert V. Zener, Dept. of Justice, Joseph P. Hoey, U. S. Atty. for Eastern Dist. of New York, on the brief), for appellees.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

LUMBARD, Chief Judge:

Plaintiff asks us to hold that the Fourth Amendment, which guarantees to the people the right to remain secure against unreasonable searches and seizures, creates a federal cause of action for damages against federal agents who have violated this right. The District Court for the Eastern District of New York dismissed the complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1331, and alternatively for failure to state a claim upon which relief can be granted.

We hold that the Fourth Amendment does not provide a basis for a federal cause of action for damages arising out of an unreasonable search and seizure. The order of the district court dismissing the complaint is affirmed.

Plaintiff Webster Bivens in his complaint, filed *pro se*, alleges that six federal agents entered his apartment on November 26, 1965 without a search or arrest warrant. After conducting a search of the apartment the agents arrested plaintiff for a violation of the narcotics laws and placed him in manacles in the presence of his wife and children. The search and the arrest are alleged to have been conducted "in an unreasonable manner." Plaintiff was taken to the Federal Court Building in Brooklyn, and then to the Federal Narcotic Bureau, where he was interrogated, fingerprinted, photographed, subjected to search of his person, and booked. It appears that the complaint filed against plaintiff ultimately was dismissed by a United States Commissioner. The events surrounding the search and arrest are said by plaintiff to have caused him "great humiliation, embarrassment, and mental suffering," and will continue to do so. Plaintiff prays for a judgment of $15,000 against each of the agents as damages for their unlawful actions.

The district court dismissed the complaint partly upon the ground that it lacked jurisdiction under 28 U.S.C. §

1331,[1] which grants to the district courts jurisdiction over actions which arise under "the Constitution, laws, or treaties of the United States." But under Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), it is clear that the district court had jurisdiction under § 1331 to determine whether this complaint, unambiguously founded upon the Fourth Amendment, states a good federal cause of action. See Wheeldin v. Wheeler, 373 U.S. 647, 649, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). The district court, in the alternative, did validly rest its disposition on the merits for failure to state a claim for which relief can be granted. It is on this ground that we affirm.

On July 12, 1968 we reversed the district court's denial of petitioner's motion for leave to appeal *in forma pauperis*, and we granted petitioner's motion for the assignment of counsel. Stephen A. Grant, Esq., has represented petitioner on this appeal. He has the thanks of this court for the conscientious and effective manner in which he has discharged his duties as assigned counsel.

■ There are two distinct questions involved in this appeal. First, we must determine whether the Fourth Amendment authorizes a private suit for damages, caused by an unreasonable search and seizure, which may be brought under the general federal question jurisdiction conferred by § 1331. If it does, the question arises whether federal agents acting in their official capacity, but in violation of their lawful and constitutional authority, are immune from suit. See Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), *cert. denied* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); cf. Pierson v. Ray, 386 U.S. 547, 555–557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Since we answer the first question in the negative we have no occasion to address the immunity issue.

■ The view that statutory authority is a prerequisite for a federal cause of action for damages, even though the wrong complained of is the violation of a constitutional right, has been adopted by all of the courts which have examined this question recently. See United States v. Faneca, 332 F.2d 872, 875 (5th Cir. 1964), *cert. denied* 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965); Johnston v. Earle, 245 F.2d 793, 796–797 (9th Cir. 1957); Koch v. Zuieback, 194 F. Supp. 651, 656 (S.D.Cal.1961), *aff'd* 316 F.2d 1 (9th Cir. 1963); Garfield v. Palmieri, 193 F.Supp. 582, 586 (E.D.N.Y. 1960), *aff'd per curiam*, 290 F.2d 821 (2d Cir.), *cert. denied* 368 U.S. 827, 82 S.Ct. 46, 7 L.Ed.2d 30 (1961); Bell v. Hood, 71 F.Supp. 813 (S.D.Cal.1947). It must be said that few of these opinions have given extensive consideration to the problem, and that only the district court opinion in Bell v. Hood, *supra,* does so in the context of a claim founded upon the Fourth Amendment. However, we do not agree with the reasoning of this latter decision, which the district court below impliedly adopted by quoting an extensive passage in its memorandum.

In Bell v. Hood the district court drew a distinction between the "governmental" action prohibited by the Fourth Amendment and the "private" nature of the unreasonable search and seizure committed by the defendant federal law enforcement officers. The court reasoned that once the officers exceeded the limits imposed on the government by the Amendment they were no longer acting with governmental authority but rather only as individuals, and that therefore they could not be sued under the Amendment.

---

1. The complaint advances several bases for jurisdiction apart from § 1331, but they are inapposite. Only action taken under color of state law is reached by 42 U.S.C. § 1983, and 28 U.S.C. § 1343(3). To come within 28 U.S.C. § 1343(4) plaintiff must be seeking relief "under any Act of Congress." In this case plaintiff seeks relief which is not extended by an Act of Congress, and for action by federal, not state, officials.

■■ We cannot accept this rationale. The fact that the officers were acting in violation of the Fourth Amendment's restraints upon governmental action does not belie the plain fact that they were acting as government officials, and not in a private capacity. It was from the federal government that they drew their apparent authority, such that reasonable citizens could not have been expected to resist their unconstitutional intrusion. Action under color of law, which utilizes the power of official position, must be deemed within the scope of the Fourth Amendment.

If, then, we do not find the precedents against plaintiff conclusive, we also note that there are no precedents at all directly in his favor. Plaintiff can cite no case sustaining a federal cause of action claiming a violation of the Fourth Amendment which was not based upon a statute or upon some other basis independent of the Amendment itself. The closest he can come is West v. Cabell, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894), but there the suit was upon the statutory bond of the defendant, a United States marshal; the violation of the Fourth Amendment's requirement concerning the sufficiency of an arrest warrant was held to constitute a breach of the bond. Absent the bond there would have been no cause of action based on the naked Amendment alone.

Thus we are facing as a question of the first impression the issue left for initial resolution to the lower federal courts by the Supreme Court in Bell v. Hood: whether a federal cause of action for damages arising out of an unconstitutional search and seizure can rest upon the Fourth Amendment in the absence of statutory authorization for the suit more specific than the general grant of federal question jurisdiction by 28 U.S.C. § 1331.

The history of the Fourth Amendment provides no sure answer to our inquiry, but we find it suggestive. The Amendment's prohibition against unreasonable search and seizure had its origin in several English cases which were damage actions for trespass. Entick v. Carrington, 19 Howell's State Trials 1029 (1765); see Huckle v. Money, 95 Eng. Rep. 768 (1763); Wilkes v. Wood, 98 Eng.Rep. 489 (1763). These cases, and the common law doctrine they evolved, were well known at the time the Fourth Amendment was adopted. Boyd v. United States, 116 U.S. 616, 626–627, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886). From this fact plaintiff argues that the drafters of the Amendment must have intended that the constitutional right against unreasonable search and seizure could be enforced by the courts through the medium of private damage actions.

But acceptance of this proposition hardly leads to the conclusion that the private damage action the drafters had in mind was a wholly new federal cause of action founded directly on the Fourth Amendment. It seems more likely that the medium contemplated was the same as that employed in Entick v. Carrington, *supra,* i. e., the common law action of trespass, administered in our judicial system by the state courts. The Amendment serves to increase the efficacy of the trespass remedy by preventing federal law enforcement officers from justifying a trespass as authorized by the national government. Cf. Wheeldin v. Wheeler, 373 U.S. 647, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); Entick v. Carrington, 19 Howell's State Trials 1029 (1765), quoted in Boyd v. United States, 116 U.S. 616, 627, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

The resulting situation, in which a constitutional provision is enforced in the state courts, under remedies created by state law, is not at all uncommon under our system. "In the scheme of the Constitution [the state courts] * * * are the primary guarantors of constitutional rights, and in many cases they may be the ultimate ones." Hart & Wechsler, The Federal Courts and the Federal System 339 (1953). Indeed, Congress did not grant to the federal courts a general jurisdiction extending to cases "arising under the Constitution" until 1875. Act of March 3, 1875, § 1,

18 Stat. 470. It would have been natural for the Framers to rely on state remedies for the enforcement of the Fourth Amendment provisions relevant to this case in view of the recognition under the common law of the antecedent right to obtain redress for a trespass.

But, whatever the original distribution of responsibility between the state and federal courts, we now do have the general federal question jurisdiction conferred by § 1331. General grants of jurisdiction have been used on rare occasions to formulate rules or remedies revolving around an established federal right, even absent explicit statutory authorization for the evolution of federal common law in these areas. The question before us is whether a similarly appropriate occasion for the implication of a federal remedy is presented by this complaint.

One precedent cited by plaintiff for such an implication is Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), where the Court acted because of the need for a uniform national rule governing transactions in the commercial paper of the United States. Similar considerations have justified decisions preempting the application of state laws, and adopting a uniform rule of federal common law in their stead, in the fields of admiralty, see e. g., Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), and regulation of interstate commerce. See generally Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141–152, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). The Supreme Court has also indicated that the need for the courts of this country to speak with a united voice on matters of foreign policy renders the area of international law appropriate for preemption. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423–427, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); see Republic of Iraq v. First National City Bank, 353 F.2d 47, 50–51 (2d Cir. 1965), cert. denied 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966) See generally Hill, The Law-Making Power of the Fed-

eral Courts: Constitutional Preemption, 67 Colum.L.Rev. 1024 (1967).

These examples of federal common law are not in point, for what plaintiff asks us to do is not to preempt state law but supplement it because of its alleged ineffectiveness in redressing violations of the Fourth Amendment. More relevant in this context are cases in which the courts have implied a remedy in order to effectuate a right or duty declared by Congress. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 207, 65 S.Ct. 226, 89 L.Ed. 173 (1944). While the Supreme Court founded these remedies upon what it regarded as the necessary implication of a statutory scheme, there was no explicit authorization for them. In a similar context we have outlined this approach to these situations:

"Implication of a private right of action may be suggested by explicit statutory condemnation of certain conduct and a general grant of jurisdiction to enforce liabilities created by the statute * * * or from such considerations as the protection intended by the legislature and the ineffectiveness of existing remedies * * * fully to achieve that end." Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 181 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

Cf. Ivy Broadcasting Co. v. American Tel. & Tel. Co., 391 F.2d 486, 490–491 (2d Cir. 1968); McFaddin Express Inc. v. Adley Corp., 346 F.2d 424, 425–426 (2d Cir. 1965), cert. denied 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed. 539 (1966).

We agree with plaintiff that if a remedy in some instances may be implied from a statutory condemnation of conduct then it is also possible for a remedy to be implied from a condemnation in the Constitution itself. However, the cases indicate, with rare exception, that the choice of ways and means to enforce a constitutional right should be left with Congress. It is when a clearly declared right is left so wanting of rem-

edies as to render it a mere "form of words," Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), that an appropriate occasion for judicial initiative has been reached. See Hart & Wechsler, *supra*, 313–316.

■ It is now clear that there is an implied injunctive remedy for threatened or continuing constitutional violations. See Bell v. Hood, 327 U.S. 678, 684 & n. 4, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 696–697, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908); United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882). This exercise of the general equity powers of the federal court initially may have developed in part because of the lack of an equity jurisdiction in many of the states. See Hart & Wechsler, *supra*, at 578, 650–651. But injunctive relief also seems to be an essential corollary to the power of judicial review established by Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803). The power to declare an action of the legislative or executive branch unconstitutional is an empty one if the judiciary lacks a remedy to stop or prevent the action. Few more unseemly sights for a democratic country operating under a system of limited governmental power can be imagined than the specter of its courts standing powerless to prevent a clear transgression by the government of a constitutional right of a person with standing to assert it. Cf. Crowell v. Benson, 285 U.S. 22, 56–61, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Thus, even if the Constitution itself does not give rise to an inherent injunctive power to prevent its violation by governmental officials there are strong reasons for inferring the existence of this power under any general grant of jurisdiction to the federal courts by Congress.

The case of Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), cited by plaintiff, may present a purer example of a constitutional right with a necessarily implied remedy. The construction of a dam by the government caused repeated overflows onto the plaintiff's land which the court found to constitute a taking of private property for a public use within the meaning of the Fifth Amendment. It may be doubted whether plaintiff could have sued for just compensation absent the Tucker Act, 28 U.S.C. §§ 1346(a) (2), 1491, which grants to the district courts and the Court of Claims jurisdiction over claims against the government "founded on the Constitution," and on an implied contract. But given this general jurisdictional grant, analogous to § 1331 in our case, the damage remedy was implied from the constitutional right itself. The right to just compensation can scarcely be vindicated other than by securing just compensation. Thus the Court read the Fifth Amendment as self-executing, creating a duty to pay upon the government even in the absence of specific statutory authorization for suits to enforce the right to just compensation. 290 U.S. at 16, 54 S.Ct. 26. See Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir.) (dictum), *cert. denied* 335 U.S. 887, 69 S. Ct. 236, 93 L.Ed. 425 (1948); see generally Developments in the Law—Remedies against the United States and Its Officials, 70 Harv.L.Rev. 827, 876–79 (1957).

A third example of an implied constitutional remedy is the exclusionary rule declared by Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and applied to the states by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). While not supported by so ready an inference as that underlying the injunctive power, the exclusionary rule provides a strong analogy to it. In allowing the state courts to admit unconstitutionally seized evidence prior to *Mapp* the federal courts were not declaring themselves powerless to prevent violations of the Fourth Amendment; the injunctive power and state trespass actions provided some sanctions for its enforcement. But the courts were allowing state governments to benefit in a real way from the violation of constitutional rights. This sit-

uation seems only slightly less offensive to the rule of law than the total absence of injunctive power. Thus the Court viewed the exclusionary rule as necessarily implied in the right to be free from unreasonable search and seizure, since without this remedy the right remained only a "form of words." 367 U.S. at 655, 81 S.Ct. 1684.

We do not believe that the remedy of a civil damage action against law enforcement officials also can be said to be implicit in the Fourth Amendment on the ground that it is essential to the effective vindication of the right to be free from unreasonable search and seizure. In general, damage actions against individual officials for past constitutional violations would appear to be much less essential to the maintenance of the rule of law than are remedies to prevent threatened or continuing constitutional transgressions by the government itself, or to prevent the government from benefiting from a constitutional violation. The distinction between governmental and individual action drawn by the district court in Bell v. Hood has validity in the sense that the primary thrust of the Bill of Rights is to shield citizens from certain actions by the government. The implication of judicial remedies to provide this shield follows naturally from the declaration of a right; far less natural is the conversion of this shield into a sword directed against individual officials.

While we do not say that the implication of such a damage action can never be essential to the vindication of a constitutional right, it is significant that no clear instance of the implication of such a remedy can be found with reference to any constitutional right. Two possible exceptions are Wiley v. Sinkler, 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84 (1900), and Swafford v. Templeton, 185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005 (1902). In both cases the Court sustained causes of action for damages against state officials based on their having deprived plaintiffs of the right to vote in federal elections as guaranteed by Art. I, § 2 of the United States Constitution.

The Court in both cases seemed to consider only the question addressed in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)—whether the suits fell within the grant of federal question jurisdiction to the federal courts by virtue of involving the construction and application of the Constitution. See Swafford v. Templeton, 185 U.S. 487, 491–492, 494, 22 S.Ct. 783, 46 L.Ed. 1005 (1902). The Court's attention was not called to the novelty of implying a damage remedy from a constitutional right, in the absence of a specific statutory foundation for the suit, and thus the cases are not persuasive authority for the legitimacy of such a course. It is noteworthy that the damage claims were in fact authorized by a section of the Civil Rights Act, now 42 U.S.C. § 1983, and that the court cited as a precedent a criminal case decided under that Act. Ex Parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884). Later cases involving civil actions for denial of a federal right to vote also explicitly rested on that statute. See, e. g., Giles v. Harris, 189 U.S. 475, 484–485, 23 S.Ct. 639, 47 L.Ed. 909 (1903) (citing *Wiley* and *Swafford*). Thus the two decisions may have rested on a similar, although implicit, basis. But see Nixon v. Herndon, 273 U.S. 536, 540, 47 S.Ct. 446, 71 L.Ed. 759 (1927) (suggesting the common law as a basis).

In contrast with *Wiley* and *Swafford* there is no possible specific statutory basis for this suit. And the failure of Congress to provide such a basis has not been the result of inattention to the problem of Fourth Amendment violations by federal agents, or to the issue of the liability of the government and government officials for tortious conduct. Congress has made it a federal crime to execute a search warrant with unnecessary severity or to exceed willfully one's authority in executing it, 18 U.S.C. § 2234; to procure the issuance of a search warrant maliciously and without probable cause, 18 U.S.C. § 2235; and, in certain circumstances, to search an occupied pri-

vate building without a warrant, 18 U.S.C. § 2236. In the area of the liability of the United States for the torts of its agents we have the Tort Claims Act, 28 U.S.C. § 2680, which specifically precludes liability based upon "false arrest," "abuse of process," or the performance of a discretionary function, categories which may well encompass a search and arrest made without a warrant and without probable cause. Because of the special problems surrounding enforcement of the Fourteenth Amendment Congress authorized damage actions against persons acting under color of *state* law to violate a right "secured by the Constitution." 42 U.S.C. § 1983.

Only last year, in the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, 82 Stat. 197, Congress recognized the need for the creation of a private damage remedy for an unauthorized interception of private communications by such means as wiretapping or the use of electronic eavesdropping devices. Section 802 of the Act, 18 U.S.C.A. § 2520 (Supp. 1969), provides that a person victimized by such an unauthorized interception is entitled to recover actual damages at a rate of not less than $100 per day for each day of interception, or a total of $1000 if this is greater, and also may recover punitive damages, and a reasonable attorney's fee together with other litigation costs. By providing a mandatory minimum recovery Congress avoids the danger that the damage remedy will become illusory because of the possible reluctance of juries to return more than trivial judgments against law enforcement officers. Yet Congress also provides some protection to these officers by declaring that proof of a good faith reliance on a court order, or on an order of emergency authorization issued by a prosecuting attorney under 18 U.S.C.A. § 2518(7) (Supp. 1969), is a complete defense to a damage action.

Congress found that there was a special need for legislation, and a civil damage remedy, to secure the right of privacy of individuals against surreptitious invasions, invasions which often will constitute violations of the Fourth Amendment if accomplished by government agents yet may not come within the scope of state trespass actions. See Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is of course open to Congress also to determine that there is a similar need for a federal damage action to remedy violations of the Fourth Amendment which do not involve wiretapping or eavesdropping. Thus far, despite the legislation which we have cited above covering closely related matters, Congress has not made such a determination. We do not believe it is apropriate for this court to fill the hiatus left in this area by Congress, see Wheeldin v. Wheeler, 373 U.S. 647, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), since we find that the absence of a federal damage action has not rendered illusory the right to remain free from unreasonable search and seizure in view of the other remedies available for its enforcement.

 The existing remedies for an unconstitutional search or seizure may not provide a totally effective enforcement scheme for Fourth Amendment rights, but they do substantially vindicate the interests protected by the Amendment. The exclusionary rule of *Weeks* and *Mapp* prevents the federal and state governments from obtaining any prosecutorial advantage by virtue of unconstitutional conduct such as is alleged in plaintiff's complaint, and thus acts as a deterrent to this conduct. Injunctive relief is available to plaintiff if he can prove that he is threatened by repeated or continuing invasions of his constitutional right of privacy. Finally, the state damage actions for trespass and false imprisonment, while admittedly of limited value because of their limited scope, see Wolf v. Colorado, 338 U.S. 25, 42–44, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (Murphy, J. dissenting), may provide plaintiff with a damage recovery if he can establish a deliberate, and not a merely technical, violation of the Fourth Amendment.

The most basic problem with the state remedies, after all, is the understandable reluctance of both judge and jury to penalize law enforcement officers for violations of our increasingly technical body of Fourth Amendment jurisprudence. It is unlikely that federal judges and juries would be any less reluctant in this respect than their state counterparts. But this reluctance should disappear when a trespass or arrest involving genuinely malicious action by the police is involved.

Judicial recognition of private damage action under the Fourth Amendment would carry with it the responsibility for developing a body of federal common law governing such questions as the types of damage recoverable, the types of injuries compensable, the extent to which official immunity is available as a defense, and the degree of evil intent which is necessary to state a meritorious cause of action. See 18 U.S.C.A. § 2520 (Supp. 1969) (statutory civil action for unauthorized wiretapping, *inter alia*). A federal court should not begin to travel down this long and uncertain road unless it is persuaded, as we are not, that the journey is essential to insure the vitality of a constitutional right. These closely balanced policy decisions concerning the manner in which to enforce a federal right normally should be left to Congress; the civil remedy created by the Safe Streets Act, *supra*, demonstrates that Congress will respond when the need for a federal damage action against law enforcement officials is manifest. Plaintiff has not convinced us that the federal courts should depart from this sound principle of judicial restraint.

The order of the district court dismissing the complaint is affirmed.

WATERMAN, Circuit Judge (concurring):

I concur in the holding that plaintiff has a cause of action, albeit a "state-created" cause of action, and which, if the facts he alleges are proven, may not be defeated by the defendants unless they successfully substantiate personal immunities from civil liability. It is my thought that by virtue of 28 U.S.C. § 1331 the federal courts can also entertain this cause of action irrespective of whether a statute exists specifically authorizing a federal suit against federal officers for damages allegedly occasioned by their unnecessarily severe acts. Here they invaded an apartment without any warrant and placed plaintiff in manacles while they conducted a constitutionally impermissible search of the apartment. See 18 U.S.C. § 2234 and 18 U.S.C. § 2236. But see 26 U.S.C. § 7607, since the defendants here are narcotics agents.

The majority point out that the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) was federally promulgated and that federal courts may enjoin federal officers from future acts which, if not enjoined, would violate the provisions of the federal constitution. It seems evident to me, therefore, that, logically, if we should wish to ensure to an individual the fullest protection of his constitutional rights, an action against federal officers for trespassory damages should be maintainable in the federal courts.

Nevertheless, the important point is the recognition that a suit will lie somewhere; and, if it seems preferable *as of now* to say that when a citizen has been damaged by a wilful or malicious violation of the federal constitution by federal officers he must rely upon his "state-created" right for his redress and may pursue vindication only in the state courts, I am prepared to concur in that holding.

Even under the doctrine here announced, a federal officer sued in a state court may, of course, at his option, remove the case to the appropriate federal court under 28 U.S.C. § 1442, and thereby adjudication of a plaintiff's action based upon his "state-created" right would, despite our today's holding, be adjudicated in a federal court.